THE SOUTH ST. JOSEPH LAND COMPANY, *Appellant*, v. PITT.

Division One, February 6, 1893,

1. **Contract to Convey Land:** CONSTRUCTION: The requirements of a contract for the sale of a lot, providing that one half of the purchase price should be paid one year after a certain manufacturing company should "have its main buildings under roof, and the balance in two years from that time," and containing a clause avoiding the contract if the vendor should fail to cause said company "to transfer its works" from another state to the addition of the city in which the lot is situated, were satisfied by the removal of the buildings and machinery to the lot and putting the main buildings under roof, without actually putting the factory in operation as a going concern.

2. ——: ——. The agreement of the vendor to level up the lot "by filling in front," is complied with by doing so at any time before he was required to make a deed, the contract fixing no time for doing the work.

*Appeal from Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED AND REMANDED.

*Porter & Woodson* for appellant.

(1) The vendor of real estate has the same right in equity to enforce specific performance as the vendee. *Paris v. Haley*, 61 Mo. 453; *Rogers v. Wolf*, 104 Mo. 1; Pomeroy on Specific Performance of Contracts, sec. 6, p. 6. (2) There being no fraud, accident or mistake in the transaction, the plaintiff is entitled to specific performance when he has performed or offered to perform the contract on his part. 3 Pomeroy on Equity Jurisprudence [1 Ed.] sec. 1407, p. 452, cases cited. (3) The court erred in admitting evidence in support of the allegation in the second

and third paragraphs of the defendant's answer relating to representations as to the capacity, operation or product of the nail mill, made prior to or contemporaneous with the contract. "No rule of evidence is better established than the one which says, when parties have put their contracts in writing, in the absence of accident, fraud or mistake, it is conclusively presumed that the whole engagement and the extent and manner of their undertaking was reduced to writing." *State ex rel. v. Hoshaw*, 98 Mo. 358; *Morgan v. Porter*, 103 Mo. 135. "The terms of a valid written instrument, as a rule, cannot be contradicted by evidence of contemporaneous or prior oral agreement." *Woodson ex rel. v. Ritchie*, 36 Mo. App. 506; *Tracy v. Iron Works*, 104 Mo. 193. A contract in writing which is complete and perfect in itself and not ambiguous in its terms, will be held to supersede a prior written contract in relation to the same subject-matter; and parol evidence will not be admitted to show that such was not the intention of the parties. *Christman v. Hodges*, 75 Mo. 413. "Parol evidence will not be received for the purpose of ingrafting additional stipulations upon a written contract which is complete in itself." *Pearson v. Carson*, 69 Mo. 55.

*B. R. Vineyard* for respondent.

(1) Defendant might avoid this contract upon two grounds; that the "works" were not transferred and that the lot was not "leveled up" within the meaning of its terms. The first is the important question. If "works" means the deposit of certain timbers and iron upon the land, to be abandoned to rot and rust, without even the advantage of a common fertilizer to the land about it, then the finding was wrong; but, if it means a going establishment that would employ one

hundred and fifty persons, make five hundred kegs of nails a day, and enhance the value of all the land around it, then the finding is right. The circular and all statements and representations of the land company and its agents were properly in evidence to show what was meant by the expression "to transfer its works from said Omaha, and locate the same on said company's land." What these works were and were to be and whether the plaintiff had in fact complied with its contract, could not be ascertained without such inquiries. (2) The lot was not "leveled up" within the meaning of the contract.

BLACK, J.—The plaintiff corporation, as vendor, brought this suit against James F. Pitt, the vendee, to enforce specific performance of a contract. The contract is dated August 25, 1888, is signed by both parties, and is in these words:

"I hereby agree to purchase from the South St. Joseph Land Company of St. Joseph, Missouri, lot 11, * * * in block 91, in South St. Joseph addition to St. Joseph, Missouri, and to pay said company therefor the sum of $1,961, one half of said sum one year after the time when the Omaha Steel Nail Company shall have their main buildings under roof, and the balance in two years from that time, at eight per cent. interest, for which said company agrees to make a warranty deed, and furnish abstract showing clear title. This agreement to be in force if the said land company shall cause the Union Steel Nail Company, of Omaha, Nebraska, to transfer its works from said Omaha, and locate the same on said company's land in said addition, by a donation of four blocks of land therein and $50,000 in money, or by any other proposition upon which said parties shall agree to locate on said property, failing in

which, this agreement to be void, and upon condition that said lot be leveled up by filling in front."

The circuit court made special findings of the facts, covering all the issues made by the pleadings, all of which findings are well supported by the evidence. The real question is, whether the facts as found by the court show a performance of the conditions in the contract concerning the removal and new location of the nail works. If there was a compliance with the terms of the contract in these respects, then the decree should have been for the plaintiff; for the court clearly and distinctly found all of the other issues of fact in favor of the plaintiff. The facts concerning the removal and location of the nail works are as follows:

The Union Steel Nail Company of Omaha, Nebraska, was a corporation owning a nail factory at Omaha, Nebraska, consisting of buildings, thirty-two nail machines and other machinery and appliances. The mill had been operated at that place for a period of ten years, but had not been in operation for fourteen months prior to the date of the contract sued upon, the twenty-fifth of August, 1888. In September, 1888, the plaintiff land company made an agreement with the Omaha company whereby the former agreed to give the latter four blocks of land in St. Joseph, situate in the addition specified in the contract sued upon in this case. On the other hand the Omaha company agreed to move its works from Omaha to St. Joseph and locate the same upon these four blocks so donated by the plaintiff. The Omaha company moved its building and machinery to St. Joseph, and the plaintiff land company conveyed these four blocks to the St. Joseph Steel and Iron Company of St. Joseph, and paid to that company the sum of $42,500, which was accepted in discharge of the agreement to pay the $50,000. The Union Steel and Iron Company of St. Joseph is the

Omaha company re-organized as a corporation under the laws of this state.

The new and old companies, being in reality one and the same company, erected the main buildings, that is to say, the rolling mill and nail factory and other buildings, such as a warehouse, machine shop, blacksmith shop and store house and had them all under roof on or prior to December 18, 1888, except one small building. Prior to the first of November, 1889, the company had placed all of the Omaha machinery, and a large amount of new machinery costing about $35,000 in these buildings. The finding of the court is that the company moved its entire works of every kind and description and located the same on these four blocks, and had expended $65,000 additional in purchasing new machinery and in erecting buildings on these blocks for the purpose of making nails and iron. For want of funds the new company has been unable to proceed further, so that work ceased on the first of November, 1889. The company has not as yet manufactured any nails, and it will still take about $25,000 to put the plant in complete working order.

1. Defendant insists that the words "transfer its *works* from said Omaha and locate the same on" etc., mean and call for a nail mill in actual operation, employing persons in the manufacture of nails; and in reaching this result much stress is laid on the word *works*. The circuit court seems to have held that there had not been a compliance with the terms of the contract, because the mill had not been entirely completed and put in operation, thus adopting the construction placed upon the contract by the defendant.

There is no doubt but the parties to the contract now in question expected the Omaha company not only to move its works to St. Joseph, but to put them in operation. The question, however, here is, did the

parties agree that this contract should be of no force if the Omaha company failed to put its new plant in operation. We think the contract does not contain any such a stipulation. The word *works* is often used as meaning "An establishment for manufacturing, or for performing industrial labor of any sort; generally in the plural, including all the building, machinery, etc., used in the required operations, as iron-works." Century Dictionary. The word was, we think, used in this sense here, that is to say, meaning the buildings and machines of the Omaha plant. The parties could not have used the word in any other sense when they say the *works* shall be *transferred* from Omaha; for the works at that place were not and had not been in operation for fourteen months. Again the prior clause in the agreement provides that defendant is to pay the one half of the purchase price, "one year after the time when the Omaha Steel Nail Company shall have their main buildings under roof, and the balance in two years after that time." The payments are, it will be seen, not made to depend upon any condition that the new plant is or shall be in operation. They are to be made in one and two years after the main buildings are under roof. This stipulation excludes the idea that plaintiff agreed that the mill should be made a going concern. We find nothing on the face of this contract which makes the actual starting up of the mill a condition to the right of the plaintiff to recover the purchase price of the lot.

There was much evidence offered and by the court received, tending to show that the Omaha company had made a proposition to the land company to move its works on condition of the donation of the four blocks and $50,000, and that to bring about this result citizens subscribed for and agreed to purchase different lots in the same addition, and thus enable the land

company to make a contract with the Omaha company. Though much had been said concerning the removal of these works, it seems no actual agreement was made by the land company with the Omaha company until after the date of the contract sued upon, hence this clause in the contract making it of no effect as to both contracting parties if the plaintiff failed to procure the removal of the works to St. Joseph.

While the evidence shows that all parties expected the works to be erected and put in operation at an early day, still all this does not show or even tend to show that the plaintiff undertook to guarantee the successful starting up or operation of the works. The whole thing was to a large extent a matter of speculation; and if the defendant did not intend to take the lot in the event that the works were not put in operation, he should have had it so stated in the contract. The plaintiff could then and doubtless would have placed a like condition in its contract with the Omaha company.

The construction which the defendant seeks to have placed upon the contract is unreasonable, even when read in the light of all the circumstances. The main buildings being under roof and the Omaha works that is to say the building and machinery moved upon these lots and put in place, the parties to this contract each for himself took the risk that the works would be put in operation. Neither gave the other any guaranty on this subject.

2. There was a ravine across the lot and hence the agreement on the part of plaintiff to level up the same "by filling in front." The proof shows that this ravine was filled up; and the court found that this work was done according to contract between May, 1889, and prior to December 19, 1889. The fact that this work was not done until close to the date when the first pay-

ment became due is no defense. The contract fixes no time for doing this work, and it was done before the plaintiff was required to make a deed.

The judgment is reversed and the cause remanded with directions to the circuit court to enter up a decree for the plaintiff on the findings of facts made at the last trial. All concur.