LEWIS, *Appellant*, v. BROOKDALE LAND COMPANY.

### Division Two, November 20, 1894.

1. **Contract: CONDITIONS: PARTIES.** A manufacturing company, for a bonus, contracted to construct its plant on a land company's land and to maintain it there for a certain time. The land company to raise the bonus sold lots conditioned on the plant being placed on certain ground. *Held*, that the purchasers of the lots were not parties to the contract requiring the maintenance of the plant for a certain time, so as to authorize them to rescind the purchases, because the plant was abandoned after construction.

2. ——: ——: RESCISSION. The contract further provided that the land company should also sell a certain number of lots, from the sales of which the bonus should be raised. *Held*, that the location of the plant having been secured, the fact that the requisite number of the lots was not sold, or the full amount of bonus was not paid, was not sufficient ground for the rescission of notes given in completion of the contracts for the sale of the lots, as the latter conditions were merely minor matters conducing to the location of the plant.

3. ———: FALSE REPRESENTATIONS: RESCISSION. False representations will not afford sufficient ground for the rescission of a contract, where the complaining party had at hand the means of knowing the real facts and neglected to avail himself of the same.

4. ———: FRAUD: RESCISSION. Fraud, upon its discovery, must be promptly repudiated, and rescission or an offer to rescind made, or it will not be relieved against.

5. ———: EQUITY. One must not only be misled by false representations, but must be misled to his injury before he can successfully seek equitable interposition.

*Appeal from Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

The petition in this case is one in equity, in substance, reciting: ' That defendant is a corporation, and was, on the twelfth day of December, 1888, the owner of a tract of land called Brookdale, an addition to the city of St. Joseph; that on that day defendant represented to plaintiff and one Henry W. Westover that it had entered into a contract with the Steel Car Company, a corporation, whereby the said Steel Car Company agreed to establish, on land adjoining Brookdale, an extensive manufactory of steel railway cars for operation on steam railways, sufficient in capacity for the employment of five hundred workmen, and equipped with the best modern machinery; the buildings to consist of a building eighty feet wide by eight hundred feet long, with an annex eighty feet wide and one hundred and sixty feet long, and to commence the manufacture of cars within six months from December 30, 1888, and to continue to operate the same five years to a sufficient capacity to give employment to an average of at least one hundred employees, upon the condition that defendant should, on or before December 30, 1888, secure to it the payment of $50,000.

That the defendant further represented that it proposed to raise said sum by the sale of its lots in said addition; which lots and all others therein would be rendered of great value by the construction, operation and maintenance of said manufactory, and the general business and prosperity of St. Joseph, of which both plaintiff and said Westover were citizens, would be increased thereby. That by means of said representations, plaintiff and Westover were induced to execute a written agreement of the following tenor:

"St. Joseph, Missouri, December 13, 1888.

"We hereby agree to purchase land from the Brookdale Land Company of St. Joseph, Missouri, lot number eleven (11), in block number nineteen (19); lot number twelve (12), in block number nineteen (19); lot number ———— ———, in block number ———— ———, in Brookdale addition to said city of St. Joseph, and agree to pay said company therefor the sum of eleven hundred dollars ($1,100), one sixth in cash when the Steel Car Company shall have its buildings inclosed, as per its contract with the said Brookdale Land Company, and one sixth in cash when the said car company shall receive its machinery at its said buildings, as per said contract, and the balance in one and two years from said last date, with interest at eight per cent. per annum, payable annually, secured by first mortgage on said lots, said Brookdale Land Company to give warranty deed.

"This agreement to be in force only upon this condition: That said Brookdale Land Company shall sell at least ten thousand front feet of its lots in said Brookdale addition and donate $50,000 of the proceeds of sales to the said Steel Car Company, and shall secure the location of said car company's works upon the northeast quarter of the northeast quarter of sec-

tion fifteen (15), township fifty-seven (57), range thirty-five (35), in Buchanan county, Missouri.

"In witness whereof we have, on the date aforesaid, hereunto subscribed.

"HENRY W. WESTOVER,
"FIELDING H. LEWIS.

"In presence of J. H. Lewis."

That at the date of said contract plaintiff and Westover paid defendant one sixth of the purchase price named in said contract ($183.33), and afterward, to wit; on the first day of July, 1889, defendant falsely represented to plaintiff and Westover that the Steel Car Company had received at its buildings its machinery, sufficient for its manufactory of the capacity aforesaid, and that defendant had already sold ten thousand front feet of its lots in Brookdale addition and paid the Steel Car Company $50,000. That, relying solely on said representations, plaintiff paid defendant the further sum of $183.33, and he and Westover, with the consent of defendant, divided their interest in said contract, Westover taking lot 11 and the plaintiff taking lot 12; and thereupon defendant conveyed said lot 12 to plaintiff, and plaintiff executed his two notes to defendant, each for $183.33, due respectively in one and two years, and secured the same by deed of trust on said lot to W. K. James, trustee.

The plaintiff paid said money, took said deed and executed said notes and deed of trust, relying solely on said representations of defendant, each of which were false, and known to be so by defendant at the time; that defendant knew the Steel Car Company was about to abandon its works and had no intention of carrying out the contract which defendant represented it had made, and that the Steel Car Company did thereupon abandon its said enterprise. That in purchasing said lots the plaintiff and Westover depended entirely upon

the value to be given them by the construction, operation and maintenance of the factory of the Steel Car Company and upon the fact of the sale of ten thousand feet of the property as promised to give them value. That if said contract had been carried out the lots would have been worth the contract price, but that owing to the abandonment of said enterprise, the lots are not worth more than $50 each. That plaintiff had tendered to defendant a good and sufficient deed of conveyance of said lot 12, with covenants of warranty against his own acts and demanded the return of his money and notes, which was refused.

The petition concludes:

"Wherefore, plaintiff brings said deed so executed by him to said Brookdale Land Company here in court and tenders the same to said company, and prays that the said Brookdale Land Company be adjudged to pay plaintiff the said sum of one hundred and eighty-three dollars and thirty-three cents ($183.33), with interest thereon at the rate of six per cent. from the time of such payment, and that defendant deliver up said notes to plaintiff, and that the said contract of purchase, notes and deed of trust, be canceled and held for naught, and for all other and proper relief."

The answer is a general denial.

After hearing the evidence in the cause, the lower court entered the following finding of facts:

"This cause having been submitted to the court upon the pleadings, evidence and exhibits in the case, all of which having been duly considered by the court, and the plaintiff having requested a special finding of facts and conclusions of law, the court doth now find the facts to be as follows:

"1. That on the fourth day of December, 1888, the defendant, the Brookdale Land Company and the Steel Car Company entered into a written con-

tract wherein it was recited that the said Steel Car Company proposed to establish a plant for the manufacture of railway cars, on a certain piece of land therein described; said contract recited the dimensions of said building and that the same was to be supplied with the best modern machinery, 'sufficient in capacity to employ an average of one hundred employees.' It further recited that land and lot owners in the vicinity of the place where the plant was to be located, proposed by land donations to assist the enterprise to the extent of '$50,000, providing that the citizens of St: Joseph would further aid it by a cash donation of $50,000. It then recited, 'that the Brookdale Land Company had undertaken to provide said fund of $50,000' by platting into lots and blocks the land it then owned, and allowing the Steel Car Company, by its agents, to sell to the citizens of St. Joseph ten thousand front feet of said land upon a price therein agreed upon, one third in cash, balance in two equal payments of one and two years each, secured by deed of trust, and that out of the cash payments for said land the sum of $50,000 was to be raised and paid to the Steel Car Company. It was further provided that one half of the cash payment was to be paid when the car company's buildings were inclosed, and the other one half when the machinery was received at said buildings.

"2. That immediately after the execution of this contract the said Steel Car Company entered into a contract with a large number of real estate agents under the name of the Real Estate Exchange of St. Joseph, reciting briefly the purposes of the former contract, and then engaged said real estate agents to sell the said ten thousand front feet of land in Brookdale addition to the citizens of St. Joseph, upon a commission therein agreed upon. That each sale of a lot was to take the form of a contract between such purchaser and the Brook-

dale Land Company, and was to contain the following provision: 'One sixth in cash when the Steel Car Company shall have its buildings inclosed as per its contract with the Brookdale Land Company, and one sixth in cash when the said car company shall receive its machinery at its said buildings as per said contract, and the balance in one and two years from said last date, with interest at eight per cent. per annum, payable annually, secured by first mortgage on said lots, said Brookdale Land Company to give warranty deed. This agreement to be in force only upon this condition: That said Brookdale Land Company shall sell at least ten thousand front feet of its lots in said Brookdale addition, and donate $50,000 of the proceeds of sales to said Steel Car Company and shall secure the location of said car company's works upon the northwest quarter of the northeast quarter of section fifteen (15), township fifty-seven (57), range thirty-five (35), in Buchanan county, Missouri.'

"3. That under this contract thus entered into between the Steel Car Company and the said Real Estate Exchange, the said real estate agents undertook the sale of the said ten thousand front feet of land in Brookdale addition.

"4. That the said real estate agents actually secured contracts covering ten thousand, two hundred and twenty-seven feet and six inches of land in said addition. That during this sale, by agreement among the real estate agents engaged therein, a large cardboard plat of that part of said addition thus to be sold, was kept at the office of W. J. Hobson, one of the said real estate agents; that whenever, during the day, any one of the agents sold a lot, he telephoned the number to said Hobson's office if not near enough to come personally and report. That thereupon a clerk in said office, who was given specially in charge of this matter,

marked the lot so sold as *reserved* until night, when the agent would come personally, and present the original land contract covering said lot, and then said lot would be marked off from the plat and record made on the back of said plat of the name of the purchaser, the number of the lot and block so sold and the name of the agent selling the same. That this method was observed until the whole of the land platted for sale, being all in said addition south of Edmond street, was sold. That after the sale was concluded the said W. J. Hobson checked off the land contracts with the plat and found all the lots sold.

"5. That relying upon the faith of the aid thus supposed to have been secured, the said Steel Car Company commenced the erection of its works of the agreed dimensions, upon the designated ground and prosecuted the same to completion, and placed therein machinery of the kind and capacity called for by their contract with the Brookdale Land Company, all of which was completed and in running order, and entered upon its business as a plant by the thirtieth day of June, 1889, as called for by said contract.

"6. That when said building had arrived at that stage of completion where the purchasers of the lots in Brookdale addition, by the terms of their contract, had agreed to make the first one sixth cash payment, many of them for various reasons declined to pay, and again when the second cash payment of one sixth became due, the real estate agents were unable to prevail upon them to pay and close up their purchases by taking deeds, and by executing their notes payable in one and two years, and securing them by deeds of trust upon the lots. That out of the whole ten thousand, two hundred and twenty-seven feet of land sold, the real estate agents were able, after several months'

efforts, to close by deeds, only five thousand, six hundred and eighty-six feet.

\*              \*              \*              \*

"8. That this plaintiff was one of those who finally closed up his lot purchase by deed, although he did not pay his first one sixth cash payment, due May 1, 1889, until June 17, 1889, and did not make his second one sixth cash payment, due June 1, 1889, until August 10, 1889. That some time prior to this last payment, plaintiff visited the Steel Car Works and found them in full operation, and knew when he made such payment that the plant was completed and running.

"9. That on the fifteenth day of September, 1889, the Steel Car Works burned down and was not rebuilt.

"10. That the Brookdale Land Company paid all the money received from the cash payments upon the land contracts, to the Steel Car Company, and some five or six hundred dollars besides, making in all so paid about $30,000.

"That while the Brookdale Land Company was not able to close up by deeds the whole of the ten thousand, two hundred and twenty-seven feet of land covered by the land contracts, for reasons herein found, and, therefore, not able to pay said Steel Car Company the full amount of the $50,000, yet the Steel Car Company's Works were secured upon the designated ground and were completely built, and were in active operation about two and one half months prior to their burning down.

"11. That no objection was ever made by plaintiff to the defendant, that the defendant was not able to close up all of its land contracts, and had not in fact paid the full sum of $50,000 to the Steel Car Company, until after the car works had burned down.

"12. That the Steel Car Company had no claim upon the Brookdale Land Company for any part of this $50,000, except as it should be received from the cash payments on the land contracts.

"13. That on June 25, 1890, plaintiff tendered defendant a warranty deed back of the lots he had purchased and demanded a return of the cash payment made thereon, and delivered said deed into court for defendant on trial of this case, and that plaintiff commenced this suit on the twentieth day of December, 1890.

"14. That the defendant acted in good faith in all things connected with plaintiff's said contract, as well as with the Steel Car Company's contract and was guilty of no fraud in relation thereto.

"15. That the defendant entered into no contract with plaintiff to maintain the works of said car company for five years.

"The court finds as conclusions of law:

"*First.* That there was a substantial compliance with plaintiff's contract. *Second.* That the Brookdale Land Company was not obliged as a matter of law, to maintain the Steel Car Company's works for five years, as a part of its legal duty to plaintiff. *Third.* That under the evidence in this case plaintiff's claim is inequitable. *Fourth.* That defendant has been guilty of no fraud in this case and the decree must be for the defendant.

*Brown & Imel* for appellant.

(1) To ascertain the meaning of the contract, we must take into consideration its subject-matter and the circumstances under which it was made. *Union Depot Co. v. Railroad,* 113 Mo. 213; *Lumber Co. v. Warren,* 93 Mo. 374; *Edwards v. Smith,* 63 Mo. 119; *Railroad*

*v. Jurey*, 111 U. S. 584; Bishop on Contracts [Enlarged Ed.], sec. 371.   The intention of the parties is the end to be sought, and this "may be ascertained by looking to the situation of the parties, the motives which induced the agreement, and the object and purposes assigned to be affected by it." *Railroad v. Jones*, 2 Cald. 574.   (2)   The contract now under consideration provides that it shall "be in force only upon this, condition:" That the defendant should sell at least ten thousand front feet of the lots, should donate $50,000 of the proceeds to the car company, and should secure the location of the works.   This suit is not an application for the remedial action of the court on account of a breach of the contract, but its object is rather to rescind and discharge the contract on account of the nonperformance of a condition on which its life is made by its terms to depend.   In this case the parties have agreed as to the effect of the act or omission, and the question of its importance is not a matter for the consideration of the court.   *Head v. Ebersoll*, L. R. 7 Ex. 7.   "Every species of contract may be subject to conditions by which an estate or interest may commence, or be enlarged or defeated." *Railroad v. Jones*, 2 Cald. 574; Pomeroy's Equity Jurisprudence, sec. 110.   (3) The notes and deed of trust sought to be canceled were obtained by fraud.   Winning admits he told plaintiff that he had secured contracts of sale for ten thousand front feet of the lots. This was a misrepresentation.

*M. A. Reed* and *B. R. Vineyard* for respondent.

(1) The land company did not obligate itself, in its contract with the lot purchasers, that the car works should be operated for five years.   For its own benefit solely, and for considerations moving wholly to

it from the Steel Car Company, it took an obligation from the car company that that company should continue to operate their works for five years. Before plaintiff can avail himself of this condition he must show that it was made for his benefit as its object, and that he was the party intended to be benefited. The following authorities give the fullest support to these views: *Insurance Co. v. Trenton Water Co.*, 42 Mo. App. 118; *Nickerson v. Hydraulic Co.*, 46 Conn. 24; *Ferris v. Water Co.*, 16 Nev. 44; *Fowler v. Water Works Co.*, 83 Ga. 219; *Howsmon v. Trenton Water Co.*, 119 Mo. 304; *Mott v. Water & Mfg. Co.*, 28 Pac. Rep. 989; *Davis v. Water Works Co.*, 6 N. W. Rep. 126; *Roddy v. Railroad,* 104 Mo. 244; *Safe Co. v. Ward*, 46 N. J. L. 19; *Lampart v. Gaslight Co.*, 14 Mo. App. 383; *Simpson v. Brown*, 68 N. Y. 355; *Vrooman v. Turner*, 69 N. Y. 280; *Austin v. Seligman*, 18 Fed. Rep. 519; *Burton v. Larkin*, 36 Kan. 246; *City of Kansas ex rel. v. O'Connell*, 99 Mo. 357; *Land Co. v. Pitt*, 114 Mo. 139. (2) When the complete, full results of a contract have been secured, the contract is substantially performed. *Conn v. McCullough*, 12 Mo. App. 356; *Railroad v. Tygard*, 84 Mo. 264; *People ex rel. v. Holden*, 82 Ill. 93; *Bridge Co. v. Pomroy*, 15 Pa. St. 159; *Holmes v. Oil Co.*, 21 Atl. Rep. 231; *Courtright v. Deeds*, 37 Iowa, 503; *State, etc., v. City of Hastings*, 24 Minn. 78; *Railroad v. Stockton*, 51 Cal. 334; *Jackson v. Stockbridge*, 29 Tex. 394. (3) Before there can be any rescission of a contract the party against whom proceedings for such rescission may be instituted, must be placed *in statu quo*. *Jarrett v. Morton*, 44 Mo. 275; *Disbrow v. Secar*, 58 Conn. 35; *Snow v. Alley*, 144 Mass. 546; *Estes v. Reynolds*, 75 Mo. 563; *Lapp v. Ryan*, 23 Mo. App. 439. (4) The right to rescind a contract on account of fraud, must be exercised promptly. Delay is destructive to the right. *Taylor v. Short,*

107 Mo. 384; *Estes v. Reynolds*, 75 Mo. 563; *Cahn v. Reid*, 18 Mo. App. 123; *Lapp v. Ryan*, 23 Mo. App. 439; *Hart v. Hendlin*, 43 Mo. 175; *Grimes v. Sanders*, 93 U. S. 55; *Plympton v. Dunn*, 148 Mass. 523; *Beetenis v. Burkholder*, 69 Pa. St. 249; *Burtle v. Levy*, 70 Cal. 250; *Disbrow v. Secar*, 58 Conn. 35; *Hunt v. Hardwick*, 68 Ga. 100.

SHERWOOD, J.—From the finding of facts in this case already set forth, it is apparent that that portion of the agreement between plaintiff and defendant relative to the sale of ten thousand front feet of lots had been made in good faith and in fulfillment of that contract, and the evidence certainly tends to support that finding. But the evidence and the finding only show that some $30,000 had been paid by the defendant company to the Steel Car Company and only about $29,500 of this sum was derived from the cash payments received upon the land contracts. And as found by the court and as is plainly evident from the defendant company's contract with the Steel Car Company, the former was not bound to pay any more money to the latter than $50,000, and only such portions of such sum as should be realized from the sale of lots, and then but to the extent of $5 per front foot of lots sold. The contract made between plaintiff and the defendant company reiterates the idea of the source whence the $50,000 was to come.

Upon this basis of facts and of findings the question arises whether the lower court was warranted in entering a decree for the defendant company.

1. It is contended that plaintiff is interested in the contract entered into between the car company and the defendant land company, and in the maintenance and operation of the car company's works for the term of five years. But this is an obvious error. To the con-

tract between the two companies plaintiff was a mere stranger, and was not in privity with either of the contracting parties in that contract.    The contract was not made for his benefit, nor was he named therein, and the mere fact that he in common with all other citizens of St. Joseph might derive benefits incident to the completion and operation of the large works then in contemplation, did not and could not alter his, *status* towards the two contracting parties.    *Insurance Co. v. Trenton Water Co.*, 42 Mo. App. 118; *Howsmon v. Trenton Water Co.*, 119 Mo. 304, and cases cited; *Kansas City ex rel. v. O'Connell*, 99 Mo. 357; *Land Co. v. Pitt*, 114 Mo. 139; *Nickerson v. Hydraulic Co.*, 46 Conn. 24. Under these authorities it is very plain that plaintiff can not rely in any degree on the contract between other parties.    Whatever ground for redress and relief he has must rest and be founded on the contract to which he himself was a party, and on its terms alone. Plaintiff has no contractual relations, with the car company, and that company owes him no duty, nor is bound to him by any form or manner of obligation. See authorities, *supra*.

2.    But granting that plaintiff's contract with defendant has not met with *literal compliance*, either by the sale of the requisite number of lots, or as to the payment of the $50,000, what then?    Is he therefore entitled to the relief he seeks?    It is by no means clear that he is, and for this reason: 

The evidence shows that the car company's works were secured and located as required; were built and in *actual operation* for two months and a half and until they were consumed by fire.    Now, considering the situation of the parties hereto and to the litigated contract and the terms thereof, it seems to be evident that the ultimate object in view, the *capsheaf* of the contract was the securing of the location of the car company's

works at the point designated; the other portions of the instrument were but subsidiary to that end. That this was the construction placed by plaintiff himself, on the contract, is shown by his testimony on cross-examination, where he says: *"If they* (the car company) *had rebuilt their works I would not have brought this suit."* The authorities cited by defendant abundantly support the position that if the end to be attained has been secured, if the contract has substantially been performed, minor matters and measures conducing thereto, which were but means and conduits to that end, although they remain to some extent unperformed, will be disregarded.

And this is especially the case where, as here, the lot purchaser derived no benefit whatever from the performance of the minor conditions, except as they caused the location of the car works. *Conn v. McCollough*, 12 Mo. App. 356; *Railroad v. Tygard*, 84 Mo. 264; *People ex rel. v. Holden*, 82 Ill. 93; *Bridge Co. v. Pomroy*, 15 Pa. St. 151; *Courtright v. Deeds*, 37 Iowa, 503; *Railroad v. Stockton*, 51 Cal. 334; *State ex rel. v. Hastings*, 24 Minn. 78; *Holmes v. Oil Co.*, 21 Atl. Rep. 231.

3.   There is no pretense in the petition that any fraud was practiced, or misrepresentations made, in securing from plaintiff the land contract, but the petition alleges that defendant falsely represented to plaintiff that the Steel Car Company had received at its buildings its machinery sufficient for its manufactory, etc., and that defendant had already sold ten thousand front feet of its lots, etc., and paid the Steel Car Company $50,000, whereupon, relying solely upon these representations, plaintiff paid defendant the further sum of $183.33 and executed his two notes and secured the same by his deed of trust, etc. The evidence, however, shows that this payment, etc., was on the

tenth day of August, 1889, when the works had been in active operation for one month and ten days. This being the case, it was but a matter of common prudence for plaintiff to have pursued such investigations as would have led to the ascertainment of the truth or falsity of such representations before he closed the matter by taking a deed, giving his notes and executing his deed of trust. The means of investigation and information were open to plaintiff and he should have made use of them.

On this topic it is said by an eminent jurist and author: "Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence." Cooley on Torts [2 Ed.], 570, and cases cited.

This case is not like one where confidential relations exist; for here the parties dealt at arm's length, and the means of knowledge were near at hand and readily obtainable.

These remarks apply, even if the representations are to be conceded to be false, something scarcely reconcilable with the court's finding of facts.

4. Other considerations tend toward the same conclusion as that reached by the lower court. Granting that there was fraud practiced on plaintiff as claimed in his petition, yet how can it avail him anything in the circumstances presented by this record? The rule in such cases is that upon discovery of the fraud, *promptly* the party must repudiate the fraud and

rescind or offer to rescind all the instruments and obligations which bind him to the obnoxious transaction. *Estes v. Reynolds*, 75 Mo. 563; *Taylor v. Short*, 107 Mo. 384; *Hart v. Handlin*, 43 Mo. 171, and other cases. Now, plaintiff instituted the present proceeding something over two years after making the land contract; eighteen months after his contract was closed up by passing deeds, and six months after he knew of the facts alleged in his petition.

5. Moreover, even if fraud was practiced on plaintiff inducing him to give his notes and execute a deed of trust, it does not appear that this resulted to his injury, and if our construction of this land contract made with plaintiff is correct, then he was not injured, having secured the location of the car works where desired, which was the main thing contracted for. And with the maintaining of those works when located, he had no concern, and, of course, if he had not, it could not possibly operate to his injury that the ten thousand feet of lots were not sold, nor the $50,000 produced by such sale paid to the car company. If this be true, then plaintiff has not been injured, even if the charge of fraud be held as proved, because it requires the concurrence of *both* fraud and injury to warrant equitable relief. A party must not only be misled by false representations, but he must be misled to his *injury* before he can successfully seek equitable interposition. *State ex rel. v. West*, 68 Mo. *loc. cit.* 232; *Lenox v. Harrison*, 88 Mo. *loc. cit.* 496.

The foregoing reasons, without adverting to others, afford ample grounds on which to say we affirm the decree of the circuit court. All concur.