BARNES & MITCHELL et al. v. CAMPBELL et al. (No. 7467.)

(Court of Civil Appeals of Texas. Dallas. July 3, 1915. Rehearing Denied Oct. 16, 1915.)

1. VENDOR AND PURCHASER ☞33 — SALE — RIGHT TO RESCIND.

A purchaser of a tract of land who knew at the time that a viaduct connecting the lots with the business portion of the city was not built cannot, the grantors not having built the viaduct, rescind on the ground of misrepresentations contained in the deed platting the property, which recited that a viaduct was to be constructed and granted the city a right of way for the building of a viaduct and waived any damages which might accrue, for it appeared that the city, and not the grantors, were to build a viaduct.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 38, 40–43, 66; Dec. Dig. ☞33.]

2. VENDOR AND PURCHASER ☞33 — RESCISSION—GROUNDS.

Where a vendor subsequently agreed with a city for the construction of a viaduct on the property sold, a statement at the time of the sale that there then existed a contract for the construction of the viaduct is no ground for rescission.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 38, 40–43, 66; Dec. Dig. ☞33.]

3. VENDOR AND PURCHASER ☞110—SALES—RESCISSION.

Where the agent of a landowner represented to purchasers of property in a subdivision that a viaduct leading to the business portion of the city would be subsequently constructed, a breach of that agreement does not warrant rescission unless it was made with intent to deceive and defraud.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 196, 197; Dec. Dig. ☞110.]

4. VENDOR AND PURCHASER ☞33—RESCISSION—ACTIONS—EVIDENCE.

In a suit, where it was sought to rescind a purchase of land on the ground of misrepresentations as to future actions, held, that such misrepresentations were not fraudulently made so as to warrant rescission.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 38, 40–43, 66; Dec. Dig. ☞33.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by L. W. Campbell, Jr., and others against George W. Barnes and wife and John O. Mitchell, copartners doing business as Barnes & Mitchell, and others. From an order granting plaintiffs a temporary injunction, defendants appeal. Injunction dissolved.

Cockrell, Gray & McBride, of Dallas, for appellants. Muse & Muse and L. W. Campbell, all of Dallas, for appellees.

RAINEY, C. J. This is an appeal from an order of the Forty-Fourth district court of Dallas county granting a temporary injunction to appellees against appellants in an action wherein L. W. Campbell, Jr., and Campbell-Harris Lumber Company sued George W. Barnes and wife, Madge Barnes, and John O. Mitchell, a partnership under the name of Barnes & Mitchell, and Ben T. Seay and Tom E. Cranfill, doing business as partners under the name of Seay-Cranfill Company, the Dallas Trust & Savings Bank, and J. D. Robinson, the object of the suit being to rescind a contract for the sale of land situated in the city of Dallas, said contract hav-

ing been made by L. W. Campbell, Jr., with Barnes & Mitchell.

We gather from the sworn petition, answers and evidence introduced that Barnes & Mitchell in 1911 owned a 40-acre tract of land. They had it laid off into blocks, lots, and streets and alleys, and had a map thereof placed upon the records of Dallas county. Said plat so mapped and recorded was designated "Barnes & Mitchell's Grand Avenue Addition." This map did not designate a "viaduct" at Merlin street, as did a subsequent map recorded a few weeks thereafter, of which a copy is hereto attached.

contained in said addition set forth and described."

Said plot or tract of land is separated from the business part of Dallas on the north by the Santa Fé Railroad, and Merlin street had only been opened up to said railroad and the extension of said street, and the building of a viaduct was greatly desired for the accommodation of those purchasing lots in said addition. Barnes & Mitchell resided in the state of Oklahoma, and Ben T. Seay, their attorney in fact, looked after their interests in Dallas and superintended the sale of lots and to such matters as pertained to said ad-

BARNES AND MITCHELL'S GRAND AVENUE ADDITION.

At the time the last map was filed, to wit, December 2, 1911, there had been filed for record a deed of dedication from Barnes & Mitchell to the city of Dallas, which deed was dated November 24, 1911, and had been accepted by said city. Said deed, after setting out a strip of land for the extension of Merlin street, recites:

"Whereas, there is to be built a viaduct on and across the G., C. & S. F. R. R. tracks and right of way at the point herein described as the N. end of the strip of land herein conveyed and dedicated, the said grantors herein, for and in consideration of the premises herein, hereby covenant and agree and do hereby grant to the city of Dallas the right and privilege to construct an adequate and suitable approach to the said proposed viaduct at its south approach, located and situated on the N. end of South Merlin street, as herein set out, and a sufficient portion of said land is hereby conveyed to the city of Dallas for such purpose, and we, the owners and holders of said land, hereby expressly give the city of Dallas the right and privilege to construct said approach and waive any claim for damages that may result to our said property

dition. During the year 1912, at different times, L. W. Campbell, Jr., purchased through Ben T. Seay all the lots in said addition remaining on hand; the consideration being cash and notes for deferred payments. Said notes were indorsed by Campbell-Harris Lumber Company, which notes were placed with the Dallas Trust & Savings Bank to secure an indebtedness due it by Barnes & Mitchell.

On December 27, 1912, the board of commissioners of the city of Dallas passed an ordinance granting to the Gulf, Colorado & Santa Fé Railroad Company the privilege of constructing and operating certain switch tracks along its line of road just north of the boundary line of said addition in consideration of said railway company constructing an overhead viaduct across its tracks on Merlin street for the purpose of extending said street. Said ordinance was duly accepted and agreed to by said railway

company, but said viaduct has never been constructed up to this time, nor any effort made to do so.

Appellee sold and conveyed a number of lots to individuals, some of whom have built upon them. Appellee's petition, in effect, charges that he was deceived and induced to enter into the contract for the purchase of said lots for the following reasons: (1) That the map of said plat first recorded did not have written thereon the word "viaduct," as indicated on the second plat recorded; (2) that the deed of dedication made by Barnes & Mitchell to the city of Dallas recited that a viaduct was to be built across the Santa Fé track on Merlin street; and (3) that said grantors stated that a contract had been made to build said viaduct, and that it was assured by them that said viaduct would be constructed across the railroad tracks on Merlin street.

[1, 2] Appellee evidently knew at the time of purchase of the lots that the viaduct was not then constructed. He should not have been deceived by the recitations in the deed of dedication made by Barnes & Mitchell to the city of Dallas that they were to construct the viaduct. While it was therein recited that a viaduct was to be constructed, said recital was made merely in connection with the covenant conveying the right of way over the property and releasing it from all damages that might accrue to adjoining property that might arise from the construction of the viaduct, and it is clear therefrom that the city was to see to the construction. There is no express agreement alleged in the petition that Barnes & Mitchell were to construct the viaduct, and if they stated that an agreement then existed to construct the same, and said agreement did not then exist, an agreement was made some time thereafter to so construct between the city of Dallas and the railway company, which rendered said statement harmless, and affords appellee no ground for relief.

[3] This leaves for consideration the question of assurance that the viaduct would be built, which assurance was made by Ben T. Seay, who was the authorized agent of Barnes & Mitchell, to make sales of said lots, and did, in fact, make the sales. This assurance was not a representation that the viaduct was then in existence, but that it was to be erected in the future. Appellee may have relied on such assurance, and believed the viaduct would be built at some future time. But was such reliance and the failure to build such as authorized a recovery in an action for rescission of a contract for the sale of land? We think not.

In Railway Company v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, where action was for the rescission of a sale of land, the deed conveyed the right of way over the land, and fraud was charged in that the agent represented that the company would establish and maintain a passenger and freight depot upon the land, which representation had been breached. The court held:

"That ordinarily a promise to perform some act in the future, although made by one party as a representation to induce the other to enter into the contract, will not amount to fraud in legal acceptation, though subsequently the promise is without any excuse, entirely broken and nonfulfilled. This is a plain and well-established proposition about which there can be no controversy; otherwise every breach of a contract would amount to fraud"—citing Bigham v. Bigham, 57 Tex. 238.

The court, however, held that, while the above was the true rule, there was a well-founded exception, though there is a conflict in the authorities upon the question. The exception is that where the parties make the representation with the intent to deceive and defraud with no intention to perform the promise.

[4] We think there is in this case a total failure to show any purpose to deceive or defraud.

Appellee read in evidence the affidavit of Ben T. Seay, president, and T. E. Cranfill, vice president, who compose the firm of Seay-Cranfill Company, and represented the said Barnes & Mitchell in platting and laying off the streets and alleys and in all other matters pertaining to the establishment of said addition, and represented them in making sales of said lots, which affidavit states, in effect: While the plat was being made and before it was placed on record, negotiations had begun between the city of Dallas and the said railway company looking to the building of said viaduct. The city required the deed of dedication from Barnes & Mitchell conveying the right of way, waiving all damages and widening Merlin street from 50 to 60 feet. This necessitated the making of a new map, which was recorded, as before stated, on December 27, 1911. The deed and map were the result of the joint acts of the city and the said Barnes & Mitchell, and were, in fact, contemporaneous transactions. That the filing of said map for record showing the viaduct was not done until the said city had prepared said deed, and was done wholly and solely in reliance upon the good intentions of said city and said railway company that they would proceed with the building and completion of the viaduct without unusual delay. That in placing said lots upon the market and in selling same to various parties they advertised and stated orally to said purchasers that said viaduct was assured and would be built within a reasonable time, which statements and advertisements were based not only upon the contract made in said deed, but on the oral assurance of the members of the board of commissioners and representations of said railway company that said viaduct would be built and said acts were done by said agents in perfect good faith, and affiants believed a majority of the purchasers bought upon the faith they had in the affiants, the municipal

board of said city, and the representations of the representatives of the railway company. The existence of such a viaduct would greatly enhance the value of said lots. This affidavit is uncontradicted, and we must accept it as embracing the true facts in regard to the question of fraud and deceit.

As we understand the transaction, there is nothing in the record to show deceit or fraud on the part of Barnes & Mitchell or their agents, but, on the other hand, it shows they acted in perfect good faith in trying to procure the building of the viaduct.

Believing the injunction was improperly granted, it will be dissolved.