SOUTHERN COLONIZATION COMPANY, A CORPORATION, *Appellant*, v. H. D. DERFLER, *Appellee*.

Opinion Filed April 28, 1917.

1. The word "condition" is not necessary to the creation of an estate upon condition, if it plainly appears from the words used that the intent of the parties was to create an estate of that description.

2. Where a covenant is dependant, the failure to perform it entitled the other party to the contract to rescission.

3. In a contract for the sale of lands which contains a provision that "these presents are made and entered into partly in consideration thereof anything in this agreement to the contrary notwithstanding; that the vendor will construct and operate or cause to be constructed and operated on or before October, 1912, a line of railroad running approximately in a northerly and southerly direction through the body of land of which the aforesaid lands are a part; said line of railroad to be so constructed as to be within 10 miles thereof," such proviso is a dependant covenant and upon the failure of the land company to comply with the same the vendee has the right to a rescission of the contract and the return to him of any amount which he may have paid on the same.

4. To ascertain whether covenants are dependant or not, the intention of the parties is to be sought for and regarded rather

than the order or time in which the acts are to be done or the structure of the instrument or the arrangement of the covenant.

5. A proviso in a contract creates a condition precedent, in the absence of anything in the contract to show that such was not the intention of the parties.

6. In a contract of sale where the article tendered is different in any respect from the article bargained for, the other party is not bound to take it.

7. When the failure to perform a contract is in regard to matters which would render the performance of the rest a thing different in substance from what was contracted for, the party not in default may abandon the contract.

8. Where one party to a contract, on the breach thereof by the other, promptly gives notice that he will not be bound by the same, and demands to be put in the position in which he was at the time the contract was made, and offers to surrender all his rights under the contract, and enters into negotiations with the other party with the object of settling their differences without recourse to the courts, which ultimately come to naught, the doctrine of laches will not be applied to defeat the injured party of his remedy, when only about three years have elapsed, unless it is clearly shown that the defendant has been injured or deprived of some defense by reason of the delay in instituting suit.

9. The difference between the value of wild and unimproved lands situated about 70 miles from any railroad, and the same lands with a railroad running through or within 10 miles from them, may be very appreciable, but is so speculative as not to be susceptible of proof, and the party injured by the failure of one who agreed with him to construct the railroad, has not an adequate remedy at law, to recover damages for the breach.

Appeal from Circuit Court for Osceola County; Jas. W. Perkins, Judge.

Judgment affirmed.

*Crawford & Jarrell,* for Appellant;

*Dickinson & Dickinson,* for Appellee.

BROWNE, C. J.—The appellee, the complainant below, brought suit against appellant by bill in equity in Osceola County to cancel a contract for the sale of land, and to recover seven hundred and thirty dollars and ninety-five cents, with interest.

Under the terms of the contract, which is set out in full in the bill, the appellee agreed to buy a fraction over eighty-two acres of wild unimproved lands situated about seventy miles from any accessible railroad station, and was to pay therefor fourteen hundred and forty-one and 30/100 dollars, with interest at the rate of six per cent per annum, payable, four hundred and eighty and 40/00 dollars on the execution of the contract, and the balance in five payments of one hundred and ninety-two and 90/100 dollars and interest, on the thirteenth day of Februrary of 1912, 1913, 1914, 1915 and 1916.

The contract contained this clause:

"Provided, however, and these presents are made and entered into partly in consideration thereof, anything in this agreement to the contrary notwithstanding:

"1.   That the vendor (Southern Colonization Company) will construct and operate, or cause to be constructed and operated, on or before December 31, 1912, a line of railroad, running approximately in a northerly and southerly direction through the body of land of which the aforesaid lands are a part; said line of railroad to be so located as to be within ten (10) miles thereof."

There are various other terms and stipulations which are not necessary to refer to here, as nothing is involved concerning them.

The complainant alleges in substance he made the initial payment of four hundred and eighty and 40/100 dollars, and the first payment of one hundred and ninety-two and 90/100 dollars and interest amounting to fifty-seven and 65/100 dollars, which came due on February 13th, 1912, and otherwise complied with the terms of the contract. He further alleges that the Southern Colonization Company did not construct and operate or cause to be constructed and operated on or before December 31, 1912, a line of railway as conditioned in the contract, and that complainant when the payment by him provided for in the contract came due on February 13, 1913, notified the defendant that he would not make the payment because the defendant had not built the railroad as provided and agreed, and demanded the return of the money he had paid on the contract, amounting to seven hundred and thirty and 95/100 dollars, and offered to return and surrendered his contract; and after considerable correspondence between them, the defendant finally stopped corresponding and failed to comply with his demand; that complainant never took or entered into possession of the land, and that the same are wild and unimproved and in the same condition that they were at the time the contract was entered into, and that he is ready and willing to place defendant in *statu quo* by surrendering the contract and relieving him from all liability to complainant, and that he has filed the contract and a duly executed release thereof in the registry of the court to be delivered to defendant on cancellation of the contract and return by defendant of money paid him by complainant on the same.

The defendant filed a demurrer to the bill on the following grounds:

"(1)   The Bill of Complaint does not show a sufficient cause of action to warrant a rescision of the contract.

"(2)    The Bill of Complaint shows that complainant has been guilty of laches.

"(3)    The Bill of Complaint shows that complainant did not restore the property in controversy or any of the rights acquired in same to the respondent at the time rescission is claimed.

"(4)    That the stipulation to build the railroad mentioned in said bill of complaint within a limited time is an independent covenant, and, therefore, not ground for rescission of any contract."

The demurrer being overruled, the defendant appealed, and assigns as error the overruling of the demurrer.

The main question raised by the demurrer is whether the clause in the contract of sale whereby the Southern Colonization Company bound itself to construct and operate a line of railroad through the body of land of which the land under consideration is a part, the railroad to be located so as to be within ten miles thereof, is a dependent or an independent covenant.    Notwithstanding that this question has been the source of much litigation, the authorities are helpful only in a general way, because while the rule seems to be clear that where a covenant is dependent, the failure to perform it entitles the other party to the contract to a rescission, we come back to the proposition, whether this is a dependent or an independent covenant, and for the determination of that we must look to the contract itself.    Where the contract states clearly that any or all the covenants to be performed by one party are conditioned upon the other party carrying out his covenants, or any of them, there is no trouble in construing it; but where it is not so expressed, it becomes necessary to construe the contract and derive therefrom what was intended.    The word "condition" is not necessary to the creation of an

estate upon condition, if it plainly appears from the words used that the intent of the parties was to create an estate of that description. Glocke v. Glocke, 113 Wis. 303, 89 N. W. Rep. 118, 57 L. R. A. 458; Richter v. Richter, 111 Ind. 456, 12 N. E. Rep. 698. "To ascertain whether covenants are dependent or not, the intention of the parties is to be sought for and regarded, rather than the order or time in which the acts are to be done, or the structure of the instrument, or the arrangement of the covenant." 2 Parsons on Contracts, 645.

A proviso in a contract creates a condition precedent, in the absence of anything in the contract to show that such was not the intention of the parties. .

In Wright v. Tuttle, 4 Day (Conn.) 313, Mr. Justice SWIFT said: "There is no word more proper to import or express a condition, than the word *provided*; and it shall always be so taken, unless it appear from the context to be the intent of the party that it shall constitute a covenant. In Robertson v. Caw, 3 Barb (N. Y.) 410, the court said: " 'Provided,' is the appropriate term for creating a condition precedent." "The word 'provided' means 'on condition.' " De Vitt v. Kaufman County, 27 Tex. Civ. App. 322, 66 S. W. Rep. 224. "No word better expresses a condition, and it is always so taken, unless the context shows" that "the intent was to create a covenant." Rich v. Atwater, 16 Conn. 409. Webster defines "provided" as, "on condition; with the stipulation; with the understanding." The Standard Dictionary definitions are: "on condition; it being stipulated or understood; a conditional particle expressing a limitation or exception; followed by that expressed or understood, or *provided* that so and so shall happen."

The clause in the contract under consideration is even stronger than if it had merely said "Provided, that, etc.

It says "Provided, however, and these presents are made and entered into partly in consideration thereof, anything to the contrary notwithstanding; that the vendor (Southern Colonization Company) will construct and operate, or cause to be constructed and operated, on or before December 31, 1912, a line of railroad, running approximately in a northerly and southerly direction through the body of land of which the aforesaid lands are a part; said line of railroad to be so located as to be within ten (10) miles thereof."

The price contracted to be paid, nearly seventeen and a half dollars per acre for wild lands approximately seventy miles from any line of railroad, supports the appellee's contention that the Southern Colonization Company contracted to sell him land situated within ten miles of a railroad, the construction of which by appellant, was a condition precedent to the complete fulfillment of his part of the contract.

An examination of the cases cited by the appellant in support of its contention that the agreement of the Southern Colonization Company to build the railroad is not a dependent condition, discloses that in all of them the decision was predicated on a different state of facts from that presented in the instant cause. A brief review of some of them will disclose the distinction. The case of Stephenson v. Atlas Coal Co., 147 Ala. 432, 41 South. Rep. 301, was one to cancel an executed contract. In the case of Piedmont Land & Imp. Co. v. Piedmont Foundry & Machine Co., 96 Ala. 389, 11 South. Rep. 332, a deed had been given in part consideration of the Piedmont Foundry and Machine Company erecting a foundry on the land and keeping it in full operation for a term of two years. The foundry company erected the works and operated them for a time, but stopped work before the ex-

piration of two years upon becoming insolvent. In this case the deed had passed, and the foundry had been erected, conditions which are not found in the case under consideration. The court in that case said: "From these facts it is buite manifest that if a rescission should be decreed by the court, it would not be practicable for the parties to be put in the situation they occupied when the contract was made." There is no impediment to putting parties to this suit in the identical situation they occupied when the contract was made. The bill alleges that the complainant never took possession of and entered into possession of the lands, which are wild and unimproved, and are in the same condition they were at the time the contract was made; and that complainant has deposited the contract and a duly executed release thereof with the Clerk of the Circuit Court for Osceola County, to be held by him in the registry of the court to be delivered to the appellant upon the court decreeing a waiver of the contract, and the return to complainant the money he has paid on account of same. In Barnes v. Campbell,—Tex. Civ. App.—, 179 S. W. Rep. 444, the vendor filed a plat showing a viaduct which connected a tract of land in which vendee purchased a number of lots, within the City of Dallas. Contemporaneously to filing this plat, there was filed a deed of dedication to the City of Dallas by the appellant (vendor) which began with the recital "Whereas there is to be built a viaduct on or across the G. C. & S. F. R. R. tracks" and the right of way had been conveyed and dedicated." In the deed of dedication the city was granted the privilege to construct an approach to the viaduct, and a sufficient portion of the company's land was given the city for the construction of the approaches. Campbell sold some of the lots, and subsequently he and other owners thereof brought suit to have the deeds cancelled. The case dif-

fered from the instant case in that the deeds had passed and the consideration fully paid, and there was no express agreement that Barnes and Mitchell were to construct the viaduct.

In the case of Lewis v. Brookdale Land Co., 124 Mo. 672, 28 S. W. Rep. 324, a Street Car Manufacturing Company, for a bonus, contracted with the Brookdale Land Company to construct its plant on the Land Company's land, and to maintain it there for a certain time. The Land Company to raise the bonus sold a number of lots in the tract where the manufacturing plant was to be built, and the contracts of sale contained a condition that it should only be in force if the Land Company should se-cure the location of the Car Company's works on a des-ignated part of the tract.

The Car Company constructed its works and had them in running order and operated its business as a plant by the time called for in its contract with the Land Company. Lewis then closed up his lot purchase by taking a deed, and finally met all deferred payments; but before making his last payment he visited the Street Car Works, and found them in full operation. Subsequently the Car Works were destroyed by fire and were not rebuilt. Lewis brought suit against the Land Company to have his deeds cancelled, and to recover what he had paid for his lots. The court held that Lewis was a mere stranger to the con-tract between the two companies, "and was not in priv-ity with either of the contracting parties in that con-tract." The court further held that the evidence showed that the Car Company's works were secured and located as required, and in actual operation when destroyed by fire; and said: "It seems to be evident that the ultimate object in view, the *capsheaf* of the contract, was the secur-ing of the location of the car company's works at the point

designated; the other points of the instrument were but subsidiary to that end. * * * The authorities cited by the defendant abundantly support the position that if the end to be attained has been secured, minor matters and measures conducing thereto, although they remain to some extent unperformed, will be disregarded."

If the appellant in the instant case had built the railroad, and commenced operating it, and the appellee had completed his payments and taken deeds for his land, and subsequently, through adversity or other cause, the company ceased to operate the railroad, the case would come within the doctrine of the case cited. The "Capsheaf" of the contract in the instant case was the construction of the railroad, and that was unperformed.

In the case of Crampton v. McLaughlin Realty Co., 51 Wash. 525, 99 Pac. Rep. 586, a contract for the sale of land on deferred payments contained several clauses in the nature of building restrictions, and concluded with these covenants: "Said parties of the first part agree that they will, free of cost to the second party, put in the necessary cement sidewalks, sewer and water mains and pave the abutting street within one year from the date hereof." The defendants set up in their answer that they had partially paved the street, and had put in sidewalks, water mains, gutters and curbs, and had laid the foundation for paving the street, and had completed seventy-five per cent in the cost and value of the improvements which they had agreed to make.

A leading English case, that of Bowes v. Shand, L. R. 2 App. Cas. 455, after several appeals, was finally decided by the House of Lords. In that case, two contracts were made in London, each for the sale of 300 tons of "Madras rice, to be shipped at Madras or coast for this port, during the month of March (and) (or) April, 1874, per Rajah

of Cochin." Part of the rice was shipped in February and part in March; the purchaser refused to accept the rice, and the seller sued for the purchase price, contending that the clause in the contract "to be shipped during the months of March and April" was not a condition precedent, and that its being shipped at another and different time was only a breach of stipulation which could be compensated for in damages. The seller contended that the time when the rice was to be shipped was part of the desscription of the subject-matter of what was sold, and if that part of the contract was not complied with, he had the right to ignore the contract, and should not be required to take the goods seeking compensation in damages, and this view was accepted by the House of Lords. Lord Chancellor CAIRNS said: "Before leaving that part of the case, I must advert to a suggestion which was made at the Bar on behalf of the Respondents, although it does not appear to have been made in the Court below. It was suggested that even if the construction of the contract be as I have stated, still if the rice was not put on board in the particular months, that would not be a reason which would justify the Appellants in having rejected the rice altogether, but that it might afford a ground for a cross action by them if they could show that any particular damage resulted to them from the rice not having been put on board in the months in question. My Lords, I cannot think that there is any foundation whatever for that argument. If the construction of the contract be as I have said that it bears, that the rice is to be put on board in the months in question, that is part of the description of the subject-matter of what is sold. What is sold is not 300 tons of rice in gross or in general. It is 300 tons of *Madras* rice to be put on board at *Madras* during the particular months."

In the same case Lord BLACKBURN said: "It was ar-

gued, or tried to be argued, on one point, that it was enough that it was rice, and that it was immaterial when it was shipped. As far as the subject-matter of the contract went, its being shipped at another and different time being (it was said) only a breach of a stipulation which could be compensated for in damages. But I think that is quite untenable. * * * If the description of the article tendered is different in any respect it is not the article bargained for, and the other party is not bound to take it. * * * Before the Defendants can be compelled to take anything in fulfilment of that contract it must be shown not merely that it is equally good, but that it is the same article as they have bargained for—otherwise they are not bound to take it."

In the case of Ballance v. Vanuxem, 191 Ill. 319, 61 N. E. Rep. 85, the court said: "When the failure to perform the contract is in respect to matters which would render the performance of the rest a thing different, in substance, from what was contracted for, so far as we are advised the authorities all agree the party not in default may abandon the contract. See also Bank of Columbia v. Hagner, 1 Pet. (U. S.) 455; Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. Rep. 12; Telfener v. Russ, 162 U. S. 170, 16 Sup. Ct. Rep. 695; Bordenave v. Gregory, 5 East 107.

Construing this contract in the light of all conditions and circumstances, it seems clear to us that Derfler intended to buy, and the Southern Colonization Company agreed to sell to him land situated on or within ten miles of a railroad. He did not contract to buy wild, unimproved lands upwards of seventy-five miles from a railroad, but lands either on or within ten miles of one. The payments were distributed over a period of time, so that the last four payments would not fall due until the time

when the railroad was to be completed and in operation. When this time had elapsed and the railroad had not been constructed as provided and agreed, Derfler at once notified the Colonization Company that he would make no more payments and demanded the return of all the money he had paid them and offered to surrender his contract.

There was some delay before the suit to rescind was instituted, and the appellant contends that Derfler was guilty of laches. The bill charges that promptly upon the expiration of the time when the railroad was to have been completed, Derfler offered to surrender his contract, and demanded the return of all money he had paid the Colonization Company, but that they kept writing and dickering with him for some months, and finally refused to correspond with him any further.

Where one party to a contract on the breach thereof by the other party, promptly gives notice that he will not be bound by the same, and demands to be put in the position in which he was at the time the contract was made, and offers to surrender all his rights under the contract, and enters into negotiations with the other party with the object of settling their differences without recourse to the courts, which ultimately come to naught, the doctrine of laches will not be applied to defeat the injured party of his remedy, when only about three years have elapsed, unless it is clearly shown that the defendant has been injured or deprived of some defense by reason of the delay in instituting suit.

The only other question for consideration is the contention that the appellee is confined to a suit at law for damages for the breach of the contract. The difference between the value of wild and unimproved lands situated about seventy miles from any railroad, and the same lands with a railroad running through, or within ten miles of

them, is so speculative as not to be susceptible of proof. In the cases cited by the appellant in support of his position, the damages were capable of being accurately estimated and proven. The proper determination of this point, however, does not depend solely on whether the damages are capable of being estimated and proven, because as we have already shown the article which the Southern Colonization Company was capable of selling to Derfler, was not what he contracted to buy, and that he therefore had the right to ignore the contract, and demand that he be placed in the position in which he was at the time the contract was made. We find no error in the order of the Chancellor overruling defendant's demurrer to the bill, and the judgment is affirmed.

TAYLOR, SHACKLEFORD, WHITFIELD and ELLIS, JJ., concur.