PÉREZ *v.* GUÁNICA CENTRALE.

APPEAL from the District Court of Ponce.

No. 547.—Decided October 13, 1911.

</div>

ORDERS EXCEPTED TO BY OPERATION OF LAW—DEMURRER.—Even when an order overruling a demurrer to the answer to the complaint is not excepted to formally it may be considered by this court when the demurrer and the order made are shown in the record, because this class of orders is deemed excepted to by operation of law.

DAMAGES—LIABILITY OF EMPLOYERS—ACCIDENT—DENIAL OF COMPLAINT.—The fact that an accident occurred in one of the houses of a defendant corporation does not necessarily imply that the latter is bound to have knowledge of the accident to the extent that it is estopped from alleging ignorance thereof in the answer to a complaint for damages.

ID.—NOTICE OF ACCIDENT BY MAIL—EMPLOYER'S LIABILITY.—When in an action for damages based on the Employers' Liability Act the plaintiff alleges that by means of a letter forwarded by mail, properly stamped and ad-

dressed, he gave notice of the accident to the defendant, stating the place where it occurred and the cause of the same, such facts are a sufficient compliance with the requirements of law although the letter really may not have been received. Such allegation could not be the subject of an admission or a denial on the part of the defendant in his answer to the complaint.

EMPLOYER'S LIABILITY—ALLEGATION OF NOTICE OF ACCIDENT—ACTION INSTITUTED WITHIN SIX MONTHS.—When an action for damages is instituted within six months following the accident on account of which the claim is made, it is unnecessary, in accordance with the Employers' Liability Act, for the plaintiff to allege in his complaint that he served notice of the accident on the employer, because such notice is necessary only when the complaint is filed after the aforesaid period.

ID.—MINORITY OF PLAINTIFF—TIME FOR COMMENCEMENT OF ACTION.—In accordance with section 40 of the Code of Civil Procedure, when the plaintiff is a minor he is allowed six months after he attains his majority to commence the action.

STRIKING OUT DEFENSES IN ANSWER—GENERAL DEMURRER TO WHOLE ANSWER.—When some of the defenses of an answer to a complaint are good and sufficient and others are not, the adequate remedy of the plaintiff is a motion to strike out the insufficient defenses; not to interpose a demurrer to the whole complaint.

EVIDENCE—INADMISSIBILITY OF LETTERS.—In order that this court may judge of the admissibility of certain letters introduced as evidence and rejected by the trial court, it is necessary to state the contents thereof in the bill of exceptions, and, failing to do this, the court must presume that the judicial decision was correct on this point.

ID.—LETTERS RELATIVE TO SETTLEMENT OF CASE.—Letters relative to a proposition for settlement made by the defendant are inadmissible as evidence of his responsibility, because the fact that a party makes offers of settlement before the suit or during the progress thereof can never in itself be deemed as an acknowledgment of his responsibility, the most that it could signify being a desire to avoid the suit or the continuance thereof, and for this reason this class of evidence should never be admitted by the courts.

LIABILITY OF EMPLOYERS—ACCIDENTS—ESSENTIAL REQUISITES OF LIABILITY.—In accordance with the Act of March 1, 1902, relative to the liability of employers, in order that employes may claim indemnity from them for damages suffered in their service it is an indispensable requisite that at the time they received the bodily injury they were exercising due zeal and diligence in their occupation, and that the accident resulted from one of the three causes specified in section 1 of said law.

ID.—MEANING OF WORD ''WORKS''—BUILDINGS UNDER CONSTRUCTION.—Buildings under construction belonging to a defendant, and wherein the accident which is the basis of the plaintiff's claim occurs, are included in the meaning of the word ''works,'' as used in the Employers' Liability Act of March 1, 1902.

ID.—DEFECT OF BUILDING—NEGLIGENCE OF EMPLOYER OR OF HIS EMPLOYES.—In order that a workman may claim damages for injuries sustained as the result of an accident occurring in a building under construction belonging to the defendant, it is necessary for the plaintiff to prove that there were

defects in the building, and that such defects had been caused, or had not been discovered or had not been ·remedied on account of the negligence of the employer or his employes.

Id.—Safe Place for Employes—Duties of Employer—Dangerous Work.— It is true that as a general rule the employer must furnish his employes with a reasonably safe place wherein to work, and that he must exercise reasonable care in complying with this duty; but this rules does not apply when the work which is being done by the employes is of such a character that by reason of its execution the danger is constantly changing, and the place becomes dangerous without any fault of the employer and without · his knowledge.

Id.—Hidden Defects.—An employer is not liable for injuries sustained by his employes on account of hidden defects of which he is ignorant and which he could not discover in the exercise of reasonable care.

The facts are stated in the opinion.

Mr. José A. Poventud for appellant.

Mr. E. S. Paine for respondent.

Mr. Justice Aldrey delivered the opinion of the court.

The complaint in this case was filed in the District Court of Ponce on February 19, 1909, and alleged substantially that on October 9, 1908, the defendant corporation owned certain buildings and houses situated on the square of said central, and that the plaintiff, Castro Pérez, 19 years of age, was employed by the central as assistant mechanic, it ,being his duty to assist in making repairs at such places as the defendant or it employes might direct; that on said 9th day of October he received orders to assist a mechanic in boring holes in some sheet iron placed on the roof of one of said houses, and that while discharging his duty with due zeal and diligence he stood with the necessary care on one of the sheets of iron which formed part of the roof of said house and fell to the ground together with the sheet, which gave way and fell because of the negligence, carelessness and remissness of the defendant, and that in consequence of his fall his left forearm was fractured and that he suffered great physical pain, the direct cause of the accident being the negligence of the defendant; that the plaintiff notified the defendant in writing of the accident within the time specified by law, and that he had suffered damages to the amount of $999, which

sum he prays that the defendant corporation be adjudged to pay him as indemnity, and also that the costs be taxed against the defendant.

The plaintiff demurred to the answer filed by the defendant and the trial court overruled the demurrer, consequently the trial was proceeded with and the court rendered judgment on March 7, 1910, declaring that the law and the facts were in favor of the defendant, and dismissed the complaint with costs.

The plaintiff appealed and filed in this court a transcript of the record and a brief, but the defendant did not appear at that time.

The errors alleged as grounds of the appeal are four, namely:

(a) That the trial court erred in overruling the demurrer filed by the plaintiff to the answer of the defendant.

(b) That it erred in refusing to allow certain letters to be introduced by the plaintiff as evidence.

(c) That the judgment is contrary to the evidence.

(d) That it is also contrary to law.

Although the order overruling the demurrer of the plaintiff was not formally excepted to, still we may consider it because the demurrer and the order appear in the transcript of the record, which is equivalent to the inclusion of the former in a bill of exceptions. In orders of this kind it is not indispensable to take formal exception to them because they are of those which are considered excepted to by operation of law in accordance with section 213 of the Code of Civil Procedure.

This being established, we may examine the first ground of the appeal, which is that the demurrer to the answer was erroneously overruled.

The demurrer was based on four grounds, to wit:

1. That the answer of the defendant corporation did not state facts sufficient to constitute a defense.

2. That the answer is ambiguous, unintelligible and eva-

sive because the defendant necessarily must have had knowledge of the manner in which the accident occurred inasmuch as it took place on the square of the Guánica Centrale, and because it also must have had knowledge of the written notice of the accident given by the plaintiff.

3. That the answer that if Castro Pérez suffered the damages alleged they were caused and were the result of the risks of his employment, which risks he assumed, does not state facts sufficient to constitute a defense.

4. That neither do the defenses based on the fact that the plaintiff was employed as a mechanic by the defendant, and that if damages were occasioned they were not caused by defects in the ways, works, or machinery of the defendant, which defects appeared not to have been discovered or remedied by the latter, or because of its negligence or that of its employes, but were due to the negligence and lack of care of the defendant only, state facts sufficient to constitute a defense.

Knowing the grounds of the demurrer, let us now see if it was properly or erroneously overruled by the trial court.

The answer contains a denial of the manner in which the accident occurred as stated in the complaint; of the fact that it occurred through the fault or negligence of the defendant; and of the fact that the plaintiff proceeded on that occasion with due zeal and diligence in the discharge of his duties. This denial of the essential facts of the complaint constitutes a good defense.

The second ground of the demurrer overruled is no better taken than the first.

One of the allegations of the complaint recites the manner in which the accident occurred and attributes the direct and immediate cause thereof to the negligence of the defendant. The following one states that the plaintiff notified the defendant in writing of the accident within the time specified by law. Both allegations were denied by the defendant, which

based its second denial on the lack of the necessary information on which to found belief.

As to the first of these allegations, the appellant maintains that the accident having occurred on the square of the Guánica Centrale the defendant necessarily must have had knowledge thereof; and as to the second, he holds that notification of the accident having been sent by mail, neither can the defendant deny this fact, for which reasons the aforesaid denials render the answer unintelligible, ambiguous, uncertain and evasive.

We cannot agree with the plaintiff and appellant in his assertion, that because of the fact that the accident occurred in one of the houses of the defendant the latter necessarily must have knowledge thereof, and that it is estopped from alleging ignorance of the same.

There is no law whatever which imposes upon a person or corporation the duty of knowing everything that happens in or about its properties to the extent that it cannot allege ignorance of such happenings.

In regard to the other allegation, that notice of the accident was forwarded by mail, the case is different, because if it is alleged that notice of the accident, stating the place and the cause thereof, was forwarded to the defendant corporation by mail, properly stamped and addressed, then that is sufficient to have complied with the requisite of the law, although in reality the notice may not have been received; and this was not an allegation either to be admitted or denied in the answer.

But, moreover, when an answer contains any good defense, as in this case, a general demurrer to the whole answer cannot be sustained.

The question in regard to the allegation as to the notice and the defendant's response thereto is not important in this case, because the complaint was filed within six months after the date of the accident on account of which the claim is made. It was unnecessary to allege such notice because it is required

only when the claim is made after said period, and, moreover, the plaintiff being under age he had, in accordance with section 40 of the Code of Civil Procedure, up to six months after attaining his majority in which to file his suit.. The appellant himself acknowledges that the notice was unnecessary..

Having decided the first two grounds of the demurrer which attacked the complaint in general, and holding that the trial court valued them properly, it becomes unnecessary to examine the other two grounds which attack the defenses alleged by the defendant, because if after omitting these the answer was sufficient (and we so understand it to be) although the defenses were bad and improper, the demurrer of the plaintiff could not for that reason prosper, and at most what he would be entitled to would be the striking out of such defenses from the answer.

In short, as to the first error assigned, the demurrer to the answer was properly overruled by the trial court, and the error alleged does not exist.

The second error assigned by the appellant is based, as already stated, upon the exclusion by the court of certain letters which he desired to introduce as evidence.

We must first state that the contents of said letters have not been included in any bill of exceptions, as is necessary, so that having a knowledge thereof we might reach an exact conclusion with respect to their admissibility at the trial. As this was not done we must presume that the trial court ruled correctly on this point.

But if we may deduce from the answers of the witnesses and from the statements of counsel for the plaintiff that one of those letters referred to proposals for settlement made by the defendant and the other to the notice of the accident given to the defendant, we shall also reach the conclusion that they were properly excluded by the court below, and for this reason no error was committed because the fact that a litigant offers to make a settlement before the trial or during the progress thereof can never in itself be held as

an acknowledgment of his liability, and the most that it can imply is that he desires to avoid the suit or its continuation, for which reason such evidence can never be admitted by the courts, as was held in the case of *Colomé* v. *Guánica Centrale* (16 P. R. R., 442).

As to the other letter relative to the notice or advice of the accident, as already stated, it was not an essential fact because the complaint was filed within six months after the date of the accident and the exclusion thereof did not prejudice the plaintiff.

Moreover, apart from these reasons there is a fact common to both letters which rendered them inadmissible, namely, that it was not shown that the person who signed them was a representative of the defendant corporation.

We have examined separately the first two errors assigned as grounds for the appeal, but we may consider and shall examine the other two jointly because of the intimate relation they bear toward each other.

The judgment of the trial court dismissed the complaint and the plaintiff now alleges that said judgment was contrary to the evidence. Let us see if the latter supports the allegations of the complaint.

The evidence taken at the trial shows that on October 9, 1908, the plaintiff, Castro Pérez, was 19 years of age and that during a few months prior to that date he had been working as an assistant mechanic for the Guánica Centrale, a corporation organized under the laws of New Jersey, for a salary of 75 cents a day; that on said day he was ordered to bore holes in certain irons of the roof of one of the houses belonging to the defendant and in order to do so he crawled over a part of said roof, and when about to stand on one of the sheets of iron which form the same he fell to the ground together with said sheet from a height of 30 feet, as a consequence of which fall his left forearm was fractured and he was prevented from working up to the date of the trial; that the sheet of iron that fell with the defendant was held

in place by solder on one side only, in which condition it had been left by the carpenter who, the day before, had removed others next to it while making a skylight, the work being visible to all and the plaintiff and his superior having been at the place on the previous day; that from the statements of witness Finch, whose assistant Castro Pérez was, it appears clearly that on the day before the carpenters worked in a visible place on said roof and that the results of their work could be seen; that the carpenters had removed some of the sheets of iron, but not the one from which the plaintiff fell; that it is also evident that other persons passed safely over said sheet of iron without falling; that no one appeared to have reason to believe that it was dangerous to pass over said sheet, nor that the carpenters were negligent or incompetent, nor employes of the corporation, nor that such manner of leaving the sheet of iron was not the usual one.

The evidence does not show in what class of business the Guánica Centrale is engaged, to what use the house where the accident occurred is destined, nor that its business was to repair roofs, nor that it did a special business in connection with roofs unlike that of any other proprietor of a house. No one advised the plaintiff that said sheet of iron was loose nor was any sign posted to give warning of the defective condition of the roof, nor did the mechanic whom the plaintiff assisted know of the defects of the aforesaid sheet of iron.

These being the essential facts brought out by the evidence introduced at the trial, let us now see if they create any liability on the part of the defendant corporation, the owner of the house where the accident occurred.

According to the Act of March 1, 1902, relative to the liability of employers, in order that employes may claim indemnity from the former for injuries received in their service, it is an indispensable requisite that when the bodily injuries occurred said employes were exercising due zeal and diligence in their work.

Although this point was denied by the defendant corporation, the evidence clearly shows that the plaintiff and appellant did not receive the injury, for which he claims damages, through his own carelessness or negligence, nor has this point been strongly urged by the defendant.

But in accordance with the aforesaid law, it is not sufficient that the accident should have occurred without negligence or carelessness on the part of the employe. It is indispensable also that the accident should have originated through one of the three causes specified in section 1 of said act, which is section 322 of the Revised Statutes of Porto Rico, which causes we may briefly state as follows: 1. By reason of any defect in the ways, works, or machinery of the defendant which arose from or had not been discovered or remedied owing to the negligence of the employer or of his employes. 2. By reason of the negligence of the superintendent of the employer. 3. By reason of the negligence of a railroad employe.

Of these three causes the last is not applicable because this was not an accident caused by the negligence of railroad employes. Neither does the second cause apply because, as the law provides, it refers to injuries caused "by reason of the negligence of any person in the service of the employer entrusted with the exercising of superintendence whose sole or principal duty is that of superintendence," and there is no allegation in the complaint nor any evidence that any person was entrusted with said work or repairs whose exclusive or principal duty it was to superintend the same. The only employes who worked with the plaintiff were fellow-workmen.

There remains, then, the first cause.

It is evident that neither the house nor the roof on which the plaintiff worked when the accident which caused his injury occurred can be classified as ways or means of communication, because that is not the object to which they are destined. They may, however, be classed as "works," regardless of what the defendant may say to the contrary

A house used in the business of a company has always been so considered, as may be seen in volume 8 of the Century Dictionary, page 697, No. 9, and in volume 29 of the American and English Encyclopedia of Law, page 852, and in the jurisprudence established by American courts.

In Words and Phrases Judicially Defined, volume 8, page 7524, we find that in the case of *South St. Joseph Land Co.* v. *Pitt,* 114 Mo. 135, this word is defined as follows: "*   *   * is often used as meaning an establishment for manufacturing or for performing industrial labor of any sort, generally in the plural, including all the buildings, machinery, etc., used in the required operations." In the case of *Conroy* v. *Inhabitants of Clinton,* 158 Mass., 318 (cited in the same work), it is stated that the word "works," as used in the Statute of 1887, c. 270, clause 1, authorizing actions for the death of employes caused "by reason of any defect in the condition of the ways, works, or machinery connected with or used in the business of the employer," means completed works and not those in course of construction. The language of this statute is the same as that of ours.

The same doctrine was applied in the case of *Hanna* v. *South St. Joseph Land Co.,* 126 Mo., 1, 13, 28 S. W., 652.

The building wherein the accident occurred is, therefore, one of the works of the defendant corporation, but as it has not been shown by the evidence that it was defective in any way nor that the accident was caused, or not discovered, or not remedied, on account of the negligence of the employer or of his employes, it is evident that in accordance with section 322, paragraph 1, of the Revised Statutes of Porto Rico the plaintiff has no right to recover from the defendant.

It is true that, as a general rule, a master is bound to furnish his servant with a reasonably safe place in which to work and should exercise reasonable care in the compliance of this duty, but this rule does not apply when the work which is being done by the servant is of such a nature that "it is constantly changing in character by their labor,   *   *   *

when the dangers which arise are very short lived, or when, by the negligence of the workmen the place is rendered unsafe without the master's fault or knowledge." (26 Cyc., 1113.)

Moreover, if the fall and injury of the plaintiff were due to the fact that the sheet of iron with which he fell to the ground was soldered on one side only and not riveted and that this was a defect, but this has not been shown, then neither has it been shown that the employer had knowledge thereof, and so not even in that case would the defendant corporation be liable therefor, because a master is not liable for injuries received by his employes which are caused by hidden defects of which he is ignorant and which he could not discover by using reasonable care. This doctrine is expressed in the case of *Mars* v. *Delaware and Hudson Canal Company,* 54 Hun., 625, wherein it is stated that a party is only liable for negligence when he fails to take the necessary measures against such dangers as may be reasonably expected to occur and which could have been avoided by using ordinary care.

In the case of *East St. Louis Packing and Provision Company* v. *Hightower,* 92 Ill., 139, it was also laid down that "a servant can not recover of his employer damages for an injury received while in the discharge of his duty from a defect in the machinery used without showing that the employe had knowledge, or might have had knowledge, of the defect by the use of reasonable diligence."

In the case of *Smith* v. *Whittier,* 30 Pac. Rep., 532, it is said that "As negligence is the violation or disregard of some duty or obligation which one owes to another, it is evident that a knowledge of the facts out of which the duty springs is an essential element in determining whether there has been any negligence," and that although in some cases "such knowledge is conclusively presumed * * * in others it devolves upon the party charging the negligence to show that the knowledge existed."

In the case at bar, skylights were being made in the iron roof of one of the defendant's buildings, to do which it was necessary to remove some of the sheets of which it was formed, it being the character of the work and not the bad condition of the roof which caused the plaintiff's fall. In other words, the sheet of iron fell with the defendant as a consequence of the repairs or work being done on the roof, and when an employe is charged with work of this character, which is constantly changing and successively passing from one condition to another, being often dangerous because of the very nature of the work, the workman assumes the ordinary risks common thereto as well as those which he knows to exist or which he could have known to exist by exercising reasonable care, unless it has been stipulated otherwise. (See 26 Cyc., 1117.)

In the case of *Schneider* v. *American Bridge Company,* 31 App. Cases, 426, Mr. Justice Shepard expressed himself as follows:

"Tested by the principles of the common law, the evidence was insufficient to show actionable negligence committed by the defendant. An immense building was in course of construction. Plaintiff's special work was at the extreme end of the same, riveting connections with the outer girder. His place of work was upon a scaffold where he appears to have been reasonably safe under the ordinary conditions of his particular labor. It does not appear from the evidence that he or his immediate colaborers were required or expected to walk over the iron framework in order to reach the scaffold provided for them, or to procure tools for the performance of their labor, or that the defendant undertook to lay boards across the beams for the purpose of enabling any of its employes to walk about over the iron framework. How the board came to be lying on the beams, or by whom, or for what purpose, it was laid there, does not appear. For aught that appears, the boards mentioned in the evidence may have been brought and laid by some of the workmen engaged in the building, for their own convenience and of their own motion, or may have been surplus boards left over from the scaffold construction. 'The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as towards

them, of keeping a building which they are employed in erecting in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellows.' (*Armour* v. *Hahn,* 111 U. S., 313, 318, 28 L. ed. 440, 441, 4 Sup. Ct. Rep., 433.) ''

In regard to the lack of liability of an employer for accidents which happen when there is no reason to expect them, Judge Cooley in the case of *Sjorgren* v. *Hall,* 53 Mich., 274, said:

''The plaintiff relies for a recovery upon the negligence of the defendants in leaving the wheel uncovered. It was shown on the trial that at a very small expense a protection could have been constructed by the side of the wheel which would have rendered this accident impossible, and it is contended that the failure to provide this protection was such culpable disregard of the safety of those whom the defendants employed as to make them responsible for all consequences. If the accident which occurred was one at all likely to happen—if it was a probable consequence of a person working about the wheel that he would be caught in it as the plaintiff was—there would be ground for pressing this argument. But the accident cannot be said to be one which even a prudent man would have been likely to anticipate * * *.

''The unexpected has happened, and we have only to see whether the defendants were neglecting any duty in not guarding against it * * *.

''A similar accident, attended by equally serious consequences, might happen almost anywhere, in any machine shop or on a farm as well as in a mill, and after it had happened it could be readily seen how it might have been avoided. But the fact that it was avoidable does not prove that there was fault in not anticipating and providing against it. If a farm laborer falls from the haymow, the fall does not demonstrate that the farmer was culpable for not railing the mow in. A man stumbling in a blacksmith shop might have his hand or even his head thrown under the trip hammer, but it would not follow that there had been any neglect of duty on the part of the blacksmith in leaving the hammer exposed. So far as there is a duty resting upon the proprietor in any of these cases, it is a duty to guard against probable dangers; and it does not go to the extent of requiring him to render accidental injuries impossible * * *. The evidence

shows a case of pure accident, with no more negligence on one side than on the other.''

And in this case we may say with Judge Cooley that ''The evidence shows a case of pure accident'' for which the defendant corporation cannot be held liable.  For this reason the judgment of the court below, releasing the defendant from the claim of the plaintiff, Castro Pérez, should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice MacLeary stated that he concurred in the judgment but not in the opinion on which it is based, and delivered a separate concurring opinion.

CONCURRENT OPINION DELIVERED BY MR. JUSTICE MACLEARY.

San Juan, Porto Rico, October 13, 1911.

In this case the five justices of this court all agree that the judgment rendered by the trial court should be affirmed. This vote was long since taken and that question was definitely settled.  But the opinion heretofore written by the first *ponente,* the present writer, did not have the good fortune to meet the entire approbation of the other justices in every particular, so it became necessary that the official opinion of the court should be prepared by some one else.  However, my own opinion already some time since prepared will serve me, with some alterations, for a concurrent one, and as such it will be reproduced and herein filed.  That opinion, except in regard to the force of the acts of Congress discussed therein, seems from the liberal use made of it in the preparation of the ''opinion of the court,'' to have the approbation in nearly all its terms of my colleagues, for which I must express my gratification.  My original opinion reads substantially as follows:

This is an action for damages on account of personal injuries.  The plaintiff, Casto Pérez, was an employe of the

defendant, the Guánica Centrale, in the capacity of assistant mechanic and as such earned 75 cents daily. His duty called him to work in metals and to assist the mechanic in making repairs and changes on the roofs of houses belonging to the central and used in its business. On October 9, 1908, the plaintiff, in the discharge of the duties incident to his employment, ascended to the roof of a building belonging to the defendant and while moving about from one part of the roof to another passed over a loose sheet of zinc or corrugated iron, which fell to the floor below, a distance of about 30 feet, and carried the plaintiff with it, whereby his left arm was broken and internal injuries were sustained, the plaintiff being rendered temporarily insensible. When he recovered consciousness he found himself in the hospital, where he remained under treatment for nine days. He was unable to do any work at all up to the time the action was filed on February 19, 1909, and even up to the date of trial in the district court on December 20 of the same year.

The complaint filed herein is in the usual form, and although a demurrer was presented thereto, it was subsequently withdrawn, and defendant made answer on the facts of the case. The plaintiff in turn demurred to the answer, and this demurrer was overruled and the case proceeded. On the trial several witnesses were examined on each side and the court, taking the matter under advisement, finally on March 7 of last year rendered judgment on the law and the facts in favor of the defendant, and adjudged the costs of the action against the plaintiff.

From this judgment the plaintiff took an appeal to this court in due time and filed a transcript of the record here on April 27, 1910. A brief for appellant is found in the record filed simultaneously with the transcript, but none was filed for the respondent at that time. Neither party was represented in oral argument at the first hearing on appeal had on October 4, 1910. This court, of its own motion, granted a second hearing, which was had on November 22, 1910, and

the respondent then filed a brief, though neither party made an oral argument notwithstanding this was mainly the object of the new hearing. The case was heard on the day set and duly taken under advisement by the court. Again on January 31 of the present year the court, in view of the importance of the legal matters involved and the accession of a new member to this bench, set the case for another hearing and indicated certain questions upon which argument was desired. On April 3 last, this hearing was had before a full bench, both parties filing briefs but only the respondent's counsel making an oral argument. The case now stands submitted for consideration and decision as finally presented to the court.

Four questions arise on the record as set forth in the several assignments of error. They are as follows:

A. Did the court err in overruling the demurrer of plaintiff to defendant's answer?

B. Did the court err in excluding the letters mentioned from the evidence?

C. Is the judgment contrary to the evidence?

D. Is the judgment contrary to the law?

In connection with the errors assigned and falling under subdivision D, we must also discuss and decide the questions submitted by the court to counsel for argument on the third and last hearing which treat of

First. The application of the Employers' Liability Acts to the facts in the record.

Second. The risks of the dangers incident to his employment assumed by the plaintiff.

Third. The obligation of the employer to furnish the employe with a safe place wherein to work.

We will review all these matters in the sequence adopted by the appellant. Let us first consider the order overruling the plaintiff's demurrer. This action of the court did not need to be excepted to formally since under section 213 of the Code of Civil Procedure an order sustaining or over-

ruling a demurrer is in this court deemed to have been excepted to and need not be embodied in the bill of exceptions, but where it appears in the record may be reviewed on appeal as though settled in such bill of exceptions. (See Code of Civil Procedure, p. 241.)

This demurrer is based on four grounds, to wit:

First. That the answer does not set forth facts sufficient to constitute a good defense to the complaint.

Second. That the answer is unintelligible, uncertain, doubtful, and evasive, since the facts set out in paragraph fifth and sixth of the complaint are necessarily known by the defendant.

Third. That the second defense contained in the answer, that of negligence on the part of the plaintiff, independent or contributory, does not show facts sufficient to constitute a good defense to the action.

Fourth. That the allegations numbered third and fourth, as contained in the answer, do not show facts sufficient to present a good defense against the action brought by the plaintiff.

If any good defense is contained in the answer the demurrer, being in its first two paragraphs directed generally to the whole answer, cannot be sustained, and a mere denial of the material allegations of the complaint is sufficient to require the plaintiff to make out his case by proof, and special defenses are not absolutely necessary. A sufficient defense is set up in the answer independently of the special defenses relied on, and the general demurrer must be overruled though the special exceptions may be well taken and require the suppression of those paragraphs of the answer at which they are aimed. In fact a motion to strike out or suppress the paragraph alleged to set out defective defenses would have been the better practice.

None of these grounds of demurrer, as presented, appear to us to require special consideration except the second. And the first part thereof, in regard to the necessary knowledge.

of the defendant of what transpired on the premises of the central, is clearly not well taken.   There may be many things continually happening there which are unknown to the company or its officers or agents; and the law does not charge a corporation with knowledge or notice of every incident that occurs in and around its works or its place of business.   But in regard to the notice given by the plaintiff to the defendant of the injuries sustained by him while in its employ, the matter is perhaps somewhat different.   If such actual notice was received the defendant ordinarily would have known it, and a slight investigation would generally indicate the fact, if it were true that no such notice had been actually given. But though no actual notice may have been received by the defendant of the time, place, and cause of the injury sustained by the plaintiff, constructive notice, if legally given, would be sufficient to satisfy the law.   Mailing a paper, properly prepared, to the defendant, in a prepaid envelope adequately directed, would constitute due notice to the company, whether it was ever actually received by the company or not from the hands of the postman.   Then this is one of those allegations of the complaint which need not have been positively admitted or denied in the answer.   The allegations of the answer on this point are clearly sufficient.

But aside from all this, was the fact of notice material to the decision of the case, and, therefore, would the error of the court in overruling the demurrer, had such ruling been erroneous, have been on this point harmful?   The appellant himself contends that the notice was unnecessary.   If so, the court in overruling the demurrer would have committed merely a harmless error, if any, on this point, and nothing more. Under section 327 of the Revised Statutes it is prescribed that no action such as this shall be maintained unless notice of the time, place, and cause of the injury is given to the employer within 30 days after the injury is received or unless the action is commenced within six months from the date of the injury.   These requirements are in the alternative.   The

record shows that this action was begun within five months after the injuries were sustained, hence it was not necessary to notify the employer nor to prove the giving of the notice required by the statute cited above. But, moreover, the plaintiff, being a minor, had, under section 40 of the Code of Civil Procedure, six months after attaining his majority to bring this suit, if in the meantime he had not sued through his father during his minority. Since the statute makes the bringing of the suit within the time limited thereby equivalent to the giving of the notice required in the alternative, the notice itself became unnecessary, and the question of whether notice was given or not is entirely immaterial. So it is clear that the error of the court in overruling the demurrer would have been a harmless one, and such an order would not have required a reversal even had it been erroneous, as claimed by the appellant. Harmless errors of the trial court do not require the reversal of the judgment. (See *Belber* v. *Calvo* [16 P. R. R., 342], decided by this court on May 19, 1910, and cases there cited. Also *Auburn Opera House and Pavilion Ass'n* v. *Hill,* 113 Cal., 382.) So the first assignment of error cannot be sustained.

But even had the court erred in overruling the demurrer presented by the plaintiff to the answer of the defendant such an error must for another reason be considered as harmless, since the case was fully presented by the plaintiff on the trial and all the legal evidence offered by him was admitted, and the decision of the court was virtually based on the idea that the plaintiff had failed to make out a case, and not on any affirmative defense urged by the defendant, no prejudice resulted to the plaintiff's cause. As the case is presented here, the rulings of the trial court on the pleadings have become immaterial to our decision and require no further consideration.

Then, we must now consider the second assignment of error, that is, the one in regard to the exclusion of certain letters offered in evidence. We have always, as is well known,

favored great liberality by our trial courts in the admission
of evidence, since all our civil cases are tried by the court
alone without the intervention of a jury, and the court can
generally, in the final consideration of the case, give such
weight only to the different parts of the evidence as they
may be entitled to receive, and may even then reject such
matters as seems to be irrelevant or unworthy of belief. But,
of course, such a practice ought not to be carried so far as
to require the court to receive evidence which is utterly irrele-
vant and cannot in any view of the case be regarded as bear-
ing on the issue. The evidence excluded consisted of certain
letters supposed to have been written by Mr. Grief, the vice
president and general manager of the defendant company, or
his confidential clerk and stenographer. Most of them seem
to have been in regard to the notice given the defendant of
the time, place, and cause of the injury, and, as we have
heretofore said, in view of the fact that this action was begun
within the six months allowed by law, such notice was un-
necessary and the evidence thereof was immaterial. Hence
its exclusion, if erroneous, was a harmless error, of which
the appellant cannot successfully complain. See cases men-
tioned above.

But one of the letters, it seems, contained an offer of
compromise which the appellant insists on considering as an
admission of liability. Courts do not permit such use to be
made of letters of this kind. We have heretofore decided
that it is contrary to a just policy to permit the efforts of
a party to avoid litigation to be thus turned against him; and
we adhere to that decision. (See the case of *Rufino Colomé
v. Guánica Centrale* [16 P. R. R., 442], decided June 7, 1910.)

But besides these considerations, it nowhere appears in
the record what were the contents of the excluded letters.
Unless they are laid before us we cannot reach an intelligent
conclusion as to their exclusion. In order to present the
question properly to this court it is necessary to set out the
letters in full, or at least in substance the essential portions

thereof, in a properly prepared and signed bill of exceptions. This not having been done, we cannot say that the trial court erred in excluding the evidence, but we must presume that the ruling made on that point was correct.

The third and fourth assignments of error may be considered together—that is to say, was the judgment rendered and appealed from made in accordance with the law and the evidence? For we must consider the law governing this case as applied to the evidence which is set out in the statement of facts, the law and the facts being inextricably interwoven and depending on each other in determining the result. The plaintiff's complaint, after the withdrawal of the demurrer, is considered to be sufficient, and we must inquire whether there is evidence enough in the record to justify a judgment in his favor. If he has not failed in his pleadings has he succeeded in his proofs? Must the plaintiff then recover unless the defendant has pleaded and proved some affirmative defense which is sufficient to exonerate it from all liability? We may pass over these questions for the present and may consider them later if necessary.

Let us first see what are the matters relied on in defense. The special defenses urged by the defendant company consist of three distinct allegations. They are substantially as follows:

First. That the plaintiff's own negligence caused or contributed to the injuries complained of, and that such injuries were not the result of any negligence on the part of the defendant.

Second. That the injuries sustained by the plaintiff were the result of risks evident to the plaintiff and assumed by him as incident to his employment.

Third. That the plaintiff was an employe of the defendant, and that the injuries sustained by him, if any, were not caused by any defects in the ways, works, or machinery belonging to or in use by the defendant in its business, which had not been discovered or remedied by the defendant; nor

were the injuries caused by the defendant's negligence or that of any person employed by it or in the service of the defendant, whose duty it was to see that the ways, works, and machinery were in good condition, or that of any person whose duty was the inspection and whose only occupation was to exercise inspection or superintendence over the same, nor by the negligence of any person having control of any property of the defendant or who physically had the same in charge, but that said injuries, if any, resulted solely from the negligence and want of care on the part of the said plaintiff himself, said defenses being made under the Employers' Liability Acts.

There is no allegation in the answer setting up the fact that the injury was the result of the negligence of a fellow-servant of the plaintiff, nor was there any evidence sufficient to sustain such an allegation had it been made. Then this phase of the litigation may be excluded from consideration here, though mildly introduced incidentally in the brief of respondent.

The foregoing are in substance the pleadings; let us see what are the facts proved in the case. There is no very material conflict in the evidence as it appears in the record. It is set out at length therein and may be generally summarized substantially as follows:

The plaintiff at the time of the injury received was a lad, 19 years of age, working as an assistant to the mechanic employed by the defendant, the Guánica Centrale. The defendant is a corporation organized under the laws of the State of New Jersey and authorized to transact business in Porto Rico. On October 9, 1908, the date on which the injury occurred, the Guánica Centrale was the owner of the house on which the plaintiff was working and from the roof of which he fell to the floor below. Such house was a part of its works used in its business. It was the duty of the plaintiff in the course of his employment to aid the mechanic in making repairs and changes in the buildings belonging to the com-

pany, including that on which the injury occurred. On the said 9th day of October, 1908, the plaintiff was required to make some holes in the roof of the house mentioned, presumably for skylights, and, while thus engaged, he proceeded to comply with his orders, passing over that portion of the roof on all-fours, and, placing himself upon a sheet of zinc which formed part of the roof and being loose and not fastened in any way, slipped and fell to the floor 30 feet below, carrying the plaintiff with it, whereby he suffered a fracture of the left forearm, which injury prevented him from working from that day until the day of trial; that the cause of the accident was the defective or unfinished condition of that portion of the roof on which plaintiff was required to work; that the said loose sheet of zinc was not well fastened with rivets or nails, but had been imperfectly fastened on one side only with solder, and had been left in that condition by the carpenter, who had on the previous day removed other sheets of zinc adjoining thereto and left the one on which the plaintiff fell; that the carpenters were in plain sight the day before, and that the effects of their work could be seen; that the carpenters in their employment had no connection whatever with the plaintiff nor with the mechanic under whom he was working; that the plaintiff and his chief were in the same place the day before; that the carpenter and his associate had passed there the day before; that several carpenters as well as the plaintiff and perhaps his chief had passed over the sheet of zinc, and that the plaintiff tried to see if it was secure; that notwithstanding his youth no agent or employe of the company warned the plaintiff of any danger connected with his employment; that the plaintiff had as great opportunities of knowing the condition of the roof as did any responsible person belonging to or employed by the corporation; that the carpenters may or may not have been regularly in the employ of the Guánica Centrale; but, assuming that they were regular employes, yet there is nothing in the evidence expressly to fix a duty upon them to notify either the

employer or the other employes of any defects. The evidence further shows that on account of the said broken arm the plaintiff necessarily suffered great physical pain, and at the time of the injury sustained he was capable of earning 75 cents per day. There was no notice posted warning any one of the defective condition of the roof until the plaintiff fell. This plaintiff had been in the employ of the defendant during at least 10 months. Except his immediate chief, against whom no negligence is imputed, there is no reason from the evidence to believe that anybody except the carpenters knew more about the condition of the roof than did the plaintiff himself; that when he fell the plaintiff was rendered unconscious and did not recover consciousness until he found himself in the hospital, where he remained nine days; that the plaintiff was out of employment from the day of the accident until the day of the trial, living with his father in San Germán. It further appeared that the plaintiff previous to the accident had been in the employ of the defendant 10 or 11 months; that immediately after the accident Mr. Miller, one of the officers of the company, came and examined the sheet of zinc to see how it was fastened, and found that it had been fastened only with solder along one side and had not been nailed or riveted; that, the mechanic whom the plaintiff was assisting knew nothing of the defects caused by the loose sheet of zinc; that it was necessary, or at least convenient, for the plaintiff in ascending to the roof to pass over this sheet of zinc, but in descending this was not necessary. There is no dispute about the serious nature of the plaintiff's injuries. There is no great or irreconcilable conflict in the testimony given by the different witnesses in this case, and the facts, as stated by them, are substantially summarized above.

It is unnecessary to decide in this case, as heretofore intimated, to what extent, if at all, the common law doctrine of the abrogation of the liabilities imposed on employers in cases of negligence by fellow-servants or co-employes is affected by the Employers' Liability Acts. The facts in this case do not

show, as presented in the record, any negligence on the part of the co-employes of the plaintiff to which the accident causing the injuries complained of can be attributed. So that branch of the argument presented may be discarded from the discussion.

On a review, then, of the pleadings and the evidence it does not clearly appear at first glance that the judgment rendered by the trial court was not justified. Let us then look further into the matter along the lines indicated to determine this fundamental question. We are, then, logically required to ascertain, first of all, what is the law applicable to the allegations made by the respective parties and the facts proven on the trial. The questions of law arising in the consideration of this matter were deemed of sufficient importance to hold three hearings of this case, which took place severally on October 4 and November 22, 1910, and on April 3, 1911. At the last hearing certain questions were submitted to counsel by the court for discussion and on these the case was deemed to depend. They are stated in the order of submission which literally reads as follows:

"In view of the importance of the legal questions involved in the decision of this case it is ordered that the same be set down for reargument, orally and by brief, on the following points, to wit:

"1st. What application, if any, have the Employers' Liability Acts passed by Congress and the Insular Legislature to the facts presented in the record?

"2d. Does it appear from the facts of this case that the employe assumed the risks of the dangers incident to his employment?

"3d. What obligation was the employer under to furnish the employe in this case with a safe place wherein to work?

"4th. What other questions, if any, are pertinent to the consideration of this matter?

"This case is accordingly set down for a rehearing on the 3d day of April, 1911, at two o'clock p. m."

These, then, are the questions which we should discuss and determine in the decision of this case and, incidentally,

the other questions properly arising from the facts presented in the record.

Of course, in the consideration and decision of any lawsuit the first matter which occurs to the mind of any judge or lawyer is naturally the law applicable to the case in hand. Oftentimes the action falls within a class which is governed by some well-known statute or can be ranked within a series of cases included in a famous line of judicial decisions, and thus the labors of the court are correspondingly lightened. The judicial mind readily reverts to such classifications as soon as a given case is presented for consideration. How is it with the case at bar? To determine under what class of cases the one in hand is properly placed we must examine the issues involved.

This is an action brought by an employe against his employer for personal injuries. We find by a reference to the statute books that there are three statutes governing the rights and obligations of employers and employes. The first of these was passed by the Insular Legislature in 1902, the second by the American Congress in 1906, and the third, also by Congress, in 1908. We must first determine which of these laws governs the case before us now. If they all apply to the subject matter, which has the controlling force?

Then, first, let us consider the Federal statutes. It has been suggested that the acts of Congress passed on June 11, 1906, and April 22, 1908, known as the Employers' Liability Acts, are applicable to the present case, and that it should be decided according to their terms. The question as to the force and applicability of these Federal statutes was raised in this case by counsel, both in their briefs and their arguments. They all frankly admit that the statutes passed by Congress are in force in this island. And, of course, where they or either of them may be found to be applicable to the case on trial it excludes the Insular statute on the same subject if there is any incompatibility between them. The question was considered constantly from the day that this

transcript was filed here on April 27, 1910, until the first argument on October 4, 1910, and again until November 22, 1910, when it was heard again; and, finally, on January 31 last, the question was deemed of special importance and a third hearing was granted, and counsel were specially asked to discuss the question "What application, if any, have the Employers' Liability Acts passed by Congress and the Insular Legislature to the facts presented in the record?" It was discussed on April 3 last, and everybody connected with the case seemed to be satisfied that these acts of Congress were in full force in this Island.

Doubts were not openly expressed on the subject in this case until June 21 last, when the court voted to affirm the judgment of the trial court herein, but refused to adopt the opinion written by the undersigned who, up to that time, was the *ponente,* thus persisting in the stand taken in the Márquez case. In my opinion it was the plain duty of this court in that case to decide this question one way or the other, especially since on our decision in regard to that point depended the right of the appellant to take an appeal from our judgment there rendered to the Supreme Court of the United States. (Section 35 of the Organic Act.) Moreover, it is and always has been for the best interests of the Island that the American law in force here should be definite and certain and well known to all the people, and it should not be left as a doubtful matter whether or not any Federal statute is in force among our population. The courts of the Island, and least of all the Supreme Court, should never lend their high authority to persons seeking to raise doubts about the laws under which our people have to live and by which their rights and obligations are determined. Neither the Supreme Court of the United States, nor the bar practicing therein, nor the bar of Porto Rico, have ever seemed to have any doubt on this subject. Then why should we suggest to the public mind a doubt and then fail to solve it? Is this the part of judges

who should be noted for the exercise of wisdom and patriotism? I think not.

The question of the force and applicability of these acts clearly and fairly arises in the case at bar and should be decided here and now. For my part I do not care to evade the responsibility or to shun the task of declaring what is believed to be the law governing our people in their rights and obligations whenever that duty devolves upon the judicial office which it is my province to fill to the best of my humble ability. If our decision on this or any other such question is erroneous, a higher tribunal is provided by the Organic Act, which is amply able to set us right and from whose decision there is no appeal.

But it is urged by my colleagues that this is a moot question, and it is not necessary to the decision of this case to say whether or not the Federal acts in regard to the liability of employers are in force in Porto Rico. In other words, that we should leave this question open to be decided in the future at the expense of some other litigant. But I cannot agree to any such proposition. I cannot consent to thus encourage litigation. *Interest reipublicae ut sit finis litium.*

Is it our duty as judges to darken counsel by rendering more uncertain what the law may be which our people are required to obey, or is it incumbent on us to explain and clarify the obscure parts of legislation so that every law-abiding citizen may readily know his duty and be prepared to do it? *Ignorantia legis neminem excusat.* Ignorance of the law excuses no man. Then should the justices of our highest court plead such an excuse for not deciding a point fairly presented to them in a case where they clearly have jurisdiction? I must unequivocally answer no. Nor can we evade our duty by ignoring these Federal statutes in our decision after once announcing them to be of sufficient importance to invite discussion of their applicability and granting a rehearing for that purpose. The question was

fairly raised on the trial here and we must meet it or dodge it; we cannot escape from this plain dilemma.

It has never been the practice of the higher American courts to evade important questions of this kind, even when they might possibly do so by reason of the peculiar circumstances of the case. The course pursued by that great father and founder of American constitutional law in the celebrated case of *Marbury* v. *Madison,* 5 U. S., 152, is one worthy to be followed. Then the question should certainly be examined. It may be presumed that in Porto Rico, like other Territories of the United States, both of these acts are in force, in such cases as they reach, under their terms and within the limitations imposed on them by the Supreme Court of the United States. (*National Bank* v. *County of Yankton,* 101 U. S., 133; *Roman Catholic Apostolic Church* v. *Municipality of Ponce,* 210 U. S., 296; *Kopel* v. *Bingham,* 211 U. S., 468, 475, 476.)

However, doubts have been expressed in regard to the force of these Federal statutes. It is supposed by the doubters that possibly these statutes may be locally inapplicable in Porto Rico. Congress, judging by the language of the statutes themselves, did not seem to have any doubt on the subject. Nor is there anything, so far as my reading extends, in the decisions of the Supreme Court of the United States that would induce anyone to think that the idea prevailed in that highest of all tribunals, that Porto Rico and her people were excluded from the protection afforded by these statutes. In my separate opinion in the case of *Márquez* v. *The New York and Porto Rico Steamship Company* (17 P. R. R., 521), filed in this court on May 6 of the present year, I treated the matter at some length. Reference is made thereto.

Under the decisions made in two celebrated cases by the Supreme Court of the United States, the Employers' Liability Act of 1906 was held to be clearly applicable to the Territories and, as far as it related to them, constitutional.

(*The Employers' Liability Cases*, 207 U. S., 463, 541; *El Paso & N. E. Ry. Co.* v. *Gutiérrez*, 215 U. S., 87.)

To the same effect will be found the brilliant opinion of Mr. Chief Justice Shepard of the Court of Appeals of the District of Columbia in *Hyde* v. *Southern Ry. Co.*, 31 App. Cases D. C., 466. This is a pioneer opinion on the subject and is remarkable for its subtle analysis and cogent logic.

Then why is this statute not in force in Porto Rico? It has been suggested that it is or may be "locally inapplicable." Under section 14 of the Organic Act, all acts of Congress "not locally inapplicable" are declared to "have the same force and effect in Porto Rico as in the United States." What is there in the substance of this act of Congress which would render it subject to be put in this class and held as "locally inapplicable"? Search is made in vain through all its sections for anything in the language of the law itself making it so, and an examination of all the decisions of this and all the Federal courts, including the highest, is alike vain in any endeavor to find such a view taken or supported by any judge of any court rendering written opinions.

As early as the year 1879 the Supreme Court of the United States once for all settled the power of Congress to legislate for the Territories. Indeed it had never been questioned before, nor has it since. Speaking through the Chief Justice, then the Honorable Morrison R. Waite, the Supreme Court says:

"All territory within the jurisdiction of the United States not included in any State must necessarily be governed by or under the authority of Congress. The Territories are but political subdivisions of the outlying dominion of the United States. Their relation to the general government is much the same as that which counties bear to the respective States, and Congress may legislate for them as a State does for its municipal organizations. The organic law of a Territory takes the place of a constitution as the fundamental law of the local government. It is obligatory on and binds the territorial authorities; but Congress is supreme, and for the purposes of this department of its governmental authority has all the powers of the

people of the United States, except such as have been expressly or by implication reserved in the prohibitions of the Constitution.

"In the organic act of Dakota there was not an express reservation of power in Congress to amend the acts of the territorial legislatures, nor was it necessary. Such a power is an incident of sovereignty, and continues until granted away. Congress may not only abrogate laws of the territorial legislatures, but it may itself legislate directly for the local government. It may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the Territories and all the departments of the territorial governments. It may do for the Territories what the people, under the Constitution of the United States, may do for the States." (*National Bank v. County of Yankton*, 101 U. S., 133.)

It also appears that Mr. Secretary Knox while Attorney General of the United States shared the views of the Supreme Court of the Unites States on this subject. He says:

"Porto Rico has been fully organized under a law of Congress providing the details of its government, and organized, for the most part, upon the plan adopted for the Territories contiguous to the States of the Union. The presumption from the whole tenor of this organic act is that a liberal construction of the provision extending the laws of the United States would comport with the design of Congress." (Opinion of Attorney General P. C. Knox, Volume XXIII, Opinions of Attorneys General [U. S.], p. 635.)

Our legislators evidently thought such laws as the Federal Employers' Liability Acts to be applicable in Porto Rico, as is clearly shown by the fact that our Insular Legislature passed a similar act four years earlier than the first act of Congress.

Moreover, in the case of *The Peck Steamship Line* v. *The New York and Porto Rico Steamship Company* and *The American Railroad Company*, 2 Porto Rico Federal Report, 109, it is held by the Federal Court for this Island that "Porto Rico is substantially a territory of the United States." (See case mentioned citing Treaty of Paris; the Foraker Act; Opinions of Attorneys General [U. S. ], Vol. XXIII, page

634; *Southern Pac. R. R. Co.* v. *United States,* 38 Fed. Rep., 55, and many other authorities.)

But it is or perhaps may be suggested that Porto Rico is not a "Territory" of the United States within the purview of the Employers' Liability Act. Why not? In the Roman Catholic Church case, discussing the applicability of the act of July 30, 1886, which enacted certain prohibitions against "the legislatures of the Territories," the law was held inapplicable to this Island, not because Porto Rico was not included in the word "Territories," but because that act was superceded by the special provision of our organic act. Mr. Chief Justice Fuller, on behalf of the Supreme Court in regard to this matter, said:

"But such general prohibitions have no application where specific permission to the contrary is granted by the organic act applying to the *particular Territories.*"

Later in the same opinion the Chief Justice continues:

"The Porto Rican act under consideration merely repeats the action of Congress in the past in *organizing other Territories.*" (*Ponce* v. *Roman Catholic Church,* 210 U. S., 296, 307, 308.)

This opinion was written in 1907 and clearly classes Porto Rico as a Territory of the United States, to which the general legislation of Congress applies.

And in the next year the same eminent jurist, speaking for the same high tribunal, maintains the same juridical position in a well-known case where the question was the application of a statute enacted long before the Spanish-American War, which provided that fugitives from justice could be demanded "of the executive authority of any State or *Territory* to which such person has fled," etc. The Chief Justice in closing his opinion in that case, said:

"It may be justly asserted that Porto Rico is a completely organized Territory, although not a Territory incorporated into the United States * * *." (*State of New York ex rel Kopel* v. *Bingham,* 211 U. S., 468, 476.)

And in a prior part of the same opinion the court adopts as a definition of the word "territory," as used in congressional legislation, the following:

"A portion of the country not included within the limits of any State, and not yet admitted as a State into the Union, but organized under the laws of Congress with a separate legislature under a territorial governor and other officers appointed by the President and Senate of the United States." (*Kopel* v. *Bingham,* 211 U. S., 475.)

This definition is applied to this Island and, if it was correctly so applied, then Porto Rico is one of the Territories which the Employers' Liability Act of 1896 was intended to affect. If the first act applies to Porto Rico then the second does also, as it is merely amendatory of the former and is limited to *common carriers by railroad,* instead of extending to all of them as the first law did. If the opinions of the highest judicial tribunal on earth are to be regarded as having any binding force in this province there can no longer be any doubt on this subject either here or elsewhere.

In regard to the laws passed by Congress in 1906 and 1908 regulating the liabilities of employers to employes and their application to the case at bar, it may well be said that the latter of these two laws, by its title, relates only to the liability of common carriers by *railroad* and, clearly, has no relation to such a case as the one now under consideration. The former act in the same maner relates to common carriers *generally* in the Territories and in the District of Columbia, and such as are engaged in interstate commerce, etc. In so far as it relates to common carriers engaged in interstate commerce this act has been declared unconstitutional and void, but it has been held to be valid and in full force in the District of Columbia and in the Territories. The whole matter is fully discussed and finally decided in the cases reported in volume 207, United States Reports, page 463 *et seq.,* and in volume 115, United States Reports, page 88 *et seq.* The opinion of Mr. Chief Justice Shepard, reported

in 31 Appeal Cases, District of Columbia, on page 466, is referred to in the latter case with approval and virtually followed in the decision.

On February 25, 1907, the Federal Court of Porto Rico held that the Employers' Liability Act passed by Congress in the previous year had nothing within it that was locally inapplicable, and that it was constitutional in so far as Porto Rico is concerned and was in force therein. (*Cortejo et al.* v. *The American Railroad Company of Porto Rico,* 2 P. R., Fed. Rep., 395, citing *The Peck Steamship Line* v. *The New York and Porto Rico Steamship Company,* 2 P. R. Fed. Rep., 109; *Díaz* v. *Fajardo Development Co.,* 2 P. R. Fed. Rep., 152, and other cases.)

But the defendant in this case is clearly not engaged in *railroad* transportation; at least there is no allegation nor any proof of such a fact to be found in the record. Then the second act cannot for that reason be considered as having any application to the particular case at bar. We have likewise searched in vain for any allegation or proof that the defendant is a common carrier at all, whether employed in railroad freighting or other kinds of transportation. It is merely shown to be a foreign corporation owning buildings in Porto Rico, on one of which this accident occurred. Then, under the facts as alleged and proved as set forth in the record, although those Federal statutes are in force in this Island, we cannot apply either of them to the present case.

However, the act of the Insular Legislature defining the obligations of employers to their employes, passed on March 1, 1902 (Rev. Stat. P. R., sections 322, 333, pages 150–156), is clearly applicable to the facts of this case, and the plaintiff as well as the defendant are alike bound by its terms, and if a recovery is had herein it must be in accordance with the rules laid down by the statute.

Let us see if the defendant has been guilty of any negligence which under the Porto Rican statute treating of the general principles of law applicable to this case would make

it liable to respond in damages to the complaint presented by the plaintiff.

Under this act there are three causes for which a recovery may be had: First, defects in the ways, works, or machinery; second, negligence of the superintendent; third, negligence of the railroad employes.

The third cause is obviously inapplicable to the case at bar. The second provides for the case of any negligence by any superintendent or person "whose sole duty, or principal duty, was that of superintendence." Nor is there any evidence that any such person was in charge of or engaged in this work. Therefore, any recovery which plaintiff seeks under this statute must be based on the first cause named, that is, a defect in the ways, works, or machinery.

Neither the house on which the plaintiff was working at the time of the injury nor the roof thereof can be classed as ways or machinery. Then we must inquire if it can fall under the denomination of "works," as used in the statute. The respondent claims in its brief that the roof of a building cannot come under the denomination of "ways, works, or machinery," as used in the Insular Employers' Liability Act and relating to the working place provided for the use of its employes. A house with or without a roof, if used by a manufacturing company in its business as the one mentioned in this case was, fairly falls under the general designation of "works"; and to hold otherwise would be giving a strained construction to the statute. No such interpretation of this act or any similar statue has ever been given, as far as our research extends, by any American court; and we certainly should not consent to lead the way in such a view of a statute passed for the protection of employes who are required to work for the owners of large factories and go wherever ordered in the discharge of their daily duties. But the American courts have defined the word "works" when used in statutes similar to our Employers' Liability Act, and

it is well to quote from some of the opinions rendered on this subject.

The Supreme Court of Missouri following the Century Dictionary defines the word "works" to be "An establishment for manufacturing, or for performing industrial labor of any sort; generally in the plural, including all the buildings, machinery, etc., used in the required operations; as, *iron-works* \* \* \*." (*South St. Joseph Land Co.* v. *Pitt,* 114 Mo., 135, 21 S. W. Rep., 450.) This decision was followed a year later by the same court in the case of *Hanna* v. *South St. Joseph Land Co.,* 126 Mo., 128 S. W. Rep., 654. To the same effect we find the case of *Conroy* v. *Clinton,* 158 Mass., 318. (See to the same purport VIII Century Dictionary, p. 6976, at bottom of first column, and Webster's International Dictionary, p. 1664, third column.) Then we are justified in considering the *building* in which the injury to plaintiff occurred as a part of defendant's *works,* as referred to in our statutes.

Then having found that the house on which plaintiff was working is to be regarded under the law as a part of defendant's "works," what defects, if any, are found therein? The evidence does not show any such defect to have existed as would fix liability on the defendant. Nor is it shown that such defect, if any existed, "arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and entrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition." Then no case has been made out under the Insular statute which would entitle the plaintiff to a judgment in his favor.

Let us next consider the general doctrine announced by the courts in regard to the obligations which are imposed on employers to furnish their employes with a safe place wherein to perform their labors. It has been held by all the American courts that it is the duty of the employer to use reasonable diligence in providing a safe place for the employe to work

in and one suitable to the purpose for which it was intended, and in so providing he is required to exercise ordinary care. What constitutes ordinary or reasonable care must be determined in the light of the special facts and circumstances surrounding each particular case. Again, the employer is required to use the same care in the inspection and supervision of the places and the appliances thus provided, for the purpose of discovering defects that may subsequently occur therein, as is required of him originally in furnishing the place, appliance, or instrument. To defeat the employe's right of recovery he must not only be aware of the defect in the appliance or the danger in the place provided, but he must know and appreciate the risks and dangers resulting or likely to follow from such dangers and defects, although he may thereby be in no better position than if he should be ignorant of the defects and the risks and dangers, by reason of his failure to exercise ordinary common sense and prudence in the examination of the place in which he is put to work or the instruments and appliances placed in his hands with which to labor. (*Alexander* v. *Central L. and M. Co.,* 104 Cal., 539; *McNamara* v. *MacDonough,* 102 Cal., 575; *Davies* v. *Oceanic Steamship Co.,* 89 Cal., 281.)

The duty which an employer owes to his employe in this respect is well settled by the strong current of authority throughout the American courts. In this connection we may aptly quote from an opinion rendered by Mr. Justice Cassoday of the Supreme Court of Wisconsin in which he says:

"It is contended that the defendant owed no duty to the plaintiff to keep the roof at the place of the accident in safe condition. But is obvious that the duties of the plaintiff and other employes of the defendant required them, from time to time, to go upon the roof at or near that place, and that the plaintiff was in the pursuit of his duties at the time he so went there. The defendant was bound to furnish the plaintiff with a reasonably safe place in which to work, or to notify him of any latent or unforeseen danger. (*Hulehan* v. *Railroad Co.,* 68 Wis., 520, 32 N. W., 528; *Nadau* v. *Lumber Co.,*

76 Wis., 127, 43 N. W., 1135.) Here the danger was hidden and could only be known to those who understood the effect of leaving ashes, dirt, etc., to accumulate upon the roof for a long time." (*Engstrom* v. *Ashland Iron & Steel Co.*, 35 N. W. Rep., 242.)

But as before stated, there is no question that our Insular Employers' Liability Act applies to the case now before us and requires this duty of the employer. In this Island this question is not altogether new. Nearly six years ago we had the question before us and so held and applied the law to a case similar to the one under consideration here. (*Morales* v. *Central Machete,* Vol. II, S. P. R., 607, judgment of June 3, 1905.) This duty of the employer is closely connected with the risks which the employe assumes on entering his service; and in treating of these matters the duties and risks mentioned are sometimes considered together by the courts.

Let us then take up the question of what risks the employe assumes in the course of his employment and, incidentally, to whose negligence, if there is any, the injury sustained by the plaintiff is due. In regard to the assumption of the risks incident to his employment which every employe assumes on undertaking any sort of service, we may say that the principles of law applicable thereto have been settled in the American courts by a vast multitude of decisions. The doctrine governing in cases of this kind may be summarized like the following.

While an employe does not assume any unusual or extraordinary risks incident to the service he undertakes to render in accepting employment, he does assume all ordinary and usual risks and perils which are incident thereto, whether the service may be dangerous or otherwise; and, besides, he assumes all risks which he knows, or, by the exercise of reasonable care may know, to exist, unless there should be some agreement to the contrary. He does not, however, assume any risks or perils which arise from the negligence of his employer nor such as are latent or are discovered only at the time of the injury of which complaint is made.

(See 26 Cyc., pp. 1177–1180, and case there cited. Also the
following: *Besares* v. *Caguas Tramway Co.* [10 P. R. R.,350],
decided by this court May 23, 1910; *Mentzer* v. *Armour,* 18
Fed. Rep., 375; *Crawford* v. *American Steel and Wire Co.,*
123 Fed. Rep., 275; *St. Louis Cordage Co.* v. *Miller,* 126
Fed. Rep., 495; *Glenmont Lumber Co.* v. *Roy,* 126 Fed.
Rep., 524.)

The law in regard to the defendant's liability in a simi-
lar case has been clearly stated by Mr. Chief Justice Shepard
of the Court of Appeals of the District of Columbia. Speak-
ing for that court, the Chief Justice says:

"Tested by the principles of the common law, the evidence was
insufficient to show actionable negligence committed by the defend-
ant. An immense building was in course of construction. Plaintiff's
special work was at the extreme end of the same, riveting connections
with the outer girder. His place of work was upon a scaffold where
he appears to have been reasonably safe under the ordinary con-
ditions of his particular labor. It does not appear from the evidence
that he or his immediate colaborers were required or expected to
walk over the iron framework in order to reach the scaffold provided
for them, or to procure tools for the performance of their labor,
or that the defendant undertook to lay boards across the beams for
the purpose of enabling any of its employes to walk about over the
iron framework. How the board came to be lying on the beams, or
by whom, or for what purpose it was laid there, does not appear.
For aught that appears, the boards mentioned in the evidence may
have been brought and laid by some of the workmen engaged in
the building, for their own convenience and of their own motion,
or may have been surplus boards left over from the scaffold con-
struction. 'The obligation of a master to provide reasonably safe
places and structures for his servants to work upon does not impose
upon him the duty, as towards them, of keeping a building which
they are employed in erecting in a safe condition at every moment
of their work, so far as its safety depends upon the due performance
of that work by them and their fellows.' (*Armour* v. *Hahn,* 111
U. S., 313, 318, 28 L. ed., 440, 441, 4 Sup. Ct. Rep., 433.)

"Again, there was no evidence to show that the board, if laid
across the beam, by the master's authority, for workmen to stand or
walk upon at their convenience, was in such a defective condition

as that the master ought to be charged with negligence in not observing it. (*Looney* v. *Metropolitan R. Co.*, 200 U. S., 480, 486, 50 L. ed. 564, 568, 26 Sup. Ct. Rep., 303.) It was said in that case: 'To hold a master responsible, a servant must show that the appliances and instrumentalities furnished were defective. A defect cannot be inferred from the mere fact of injury. There must be some substantive proof of the negligence. Knowledge of the defect or some omission of duty in regard to it must be shown.'" (*Schneider* v. *American Bridge Co.*, 31 App. Cases D. C., 426.)

This case is so very similar to the one at bar that we may well adopt the reasoning and almost the very language quoted.

Another view may be taken of this case as made out from the facts proven on the trial, and that is that it is impossible to impute blame to any one in the transaction, but that the occurrence which resulted in the fall and consequent injury of the plaintiff was an accident against which it would have been very difficult, if not impossible, to provide. Such events occur daily with results more or less inconvenient and sometimes disastrous and even fatal. But as long as human nature remains fallible we must take it as we find it and not attempt to adjust to erring human creatures precepts of responsibility which are only fit to furnish rules of action to superior beings. In this connection we may well recur to the language of that distinguished jurist, Mr. Chief Justice Thomas M. Cooley, who in a well-considered case, says:

"The plaintiff relies for a recovery upon the negligence of the defendants in leaving the wheel uncovered. It was shown on the trial that at a very small expense a protection could have been constructed by the side of the wheel which would have rendered this accident impossible, and it is contended that the failure to provide this protection was such culpable disregard of the safety of those whom the defendants employed as to make them responsible for all consequences. If the accident which occurred was one at all likely to happen—if it was a probable consequence of a person working about the wheel that he would be caught in it as the plaintiff was—there would be ground for pressing this argument. But the accident cannot be said to be one which even a prudent man would have been likely to anticipate   *   *   *.

"The unexpected has happened, and we have only to see whether the defendants were neglecting any duty in not guarding against it.

"A similar accident, attended by equally serious consequences, might happen almost anywhere, in any machine shop or on a farm as well as in a mill, and after it had happened it could be readily seen how it might have been avoided. But the fact that it was avoidable does not prove that there was fault in not anticipating and providing against it. If a farm laborer falls from a haymow, the fall does not demonstrate that the farmer was culpable for not railing the mow in. A man stumbling in a blacksmith shop might have his hand or even his head thrown under the trip hammer, but it would not follow that there had been any neglect of duty on the part of the blacksmith in leaving the hammer exposed. So far as there is a duty resting upon the proprietor in any of these cases, it is a duty to guard against probable dangers; and it does not go to the extent of requiring him to render accidental injuries impossible.

"The evidence shows a case of pure accident, with no more negligence on one side than on the other." (*Sjogren* v. *Hall*, 53 Mich. Rep., 274.)

This case is so directly in point and the opinion is so clear and logical and of such high authority that we might very properly rest our decision if necessary on it alone; but, taken in connection with the other authorities cited and the other opinions from which quotations have been made, we are impelled to affirm the judgment rendered by the court below.

But beyond all these considerations, it has been decided by the highest judicial authority that the obligation of the employer to furnish his employe with a reasonably safe place to work does not extend to a building in process of construction, change, or repair. It is obviously impossible for the employer to follow the changed condition of the building from moment to moment, and to keep it safe for every different artisan who is required to work on it from hour to hour as the changes occur. In such a condition of affairs the obligations imposed on the employer have to be modified to meet the circumstances of the case. In the case of *Armour*

v. *Hahn,* 111 U. S., 318, the Supreme Court of the United States, says:

"The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as towards them, of keeping a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellows."

This case merely bears out the general doctrine that an employe must be held to assume the risk created by the very work in which he is engaged, such for instance as in the case at bar, when the work itself tends to make the structure unsafe. What risk there was appeared perfectly open to ordinary sight and casual observation. Plaintiff, a mechanic who had been working for the defendant for 10 months, must be held to have been aware of the obvious risk connected with the crawling up a half-dismembered roof, like the one described in the record. The cases are unanimous that in such a case, unless patent negligence on the part of the defendant is proved, the plaintiff cannot recover. Here there is no evidence of negligence on the part of any person.

Taking the views indicated of the principal points in this case, it is unnecessary to discuss at greater length the other questions presented in the argument or suggested in the briefs of counsel. Believing from the evidence that the injuries received by Pérez were the result of a mere accident which no foresight on the part of either the plaintiff or the defendant would probably have been able to prevent, and that neither of them was culpably negligent in the premises, we cannot hold the defendant accountable in damages.

For these reasons we should be constrained to leave the judgment of the trial court undisturbed.